IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2006 JUN 26  P 1: 54

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

|  |  |  |
|---|---|---|
| U.S. BEVERAGE, INC. | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action No. 2:06-CV-496-~~SRW~~ MEF |
| | ) | |
| JOHN BUSTER WALKER, II; and | ) | |
| TRIDENT MARKETING, INC.; | ) | |
| | ) | |
| **Defendants.** | ) | |
| ------------------------------------------- | ) | |
| JOHN BUSTER WALKER, II; and | ) | |
| TRIDENT MARKETING, INC.; | ) | |
| | ) | |
| **Counterclaim Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| U.S. BEVERAGE, INC.; | ) | |
| | ) | |
| **Counterclaim Defendant,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| GRADY DOWLING KITTRELL; | ) | |
| THOMAS GOING CLARK, III; and | ) | |
| NORMAN"Buddy" TODD; | ) | |
| | ) | |
| **Third Party Defendants.** | ) | |

## ANSWER TO COMPLAINT AND COUNTERCLAIM
### (TRO, and Preliminary and Permanent Injunctive Relief Requested)

COME NOW, John Buster Walker, II and Trident Marketing, Inc. and respectfully

submit this Answer and Counterclaim to the above referenced lawsuit filed by U.S. Beverage:

    1.     Admit.

    2.     Admit.

3.    Admit in part; Defendants deny that Trident Marketing, Inc has conducted business in the State of Alabama.

4.    This paragraph states a legal conclusion that cannot be admitted or denied.

5.    Admit.

6.    Admit.

7.    Admit in part; denied as to Trident Marketing, Inc. because Trident Marketing, Inc. has not engaged in business in the State of Alabama.

8.    Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 8; therefore, Defendants deny said allegations.

9.    Admit.

10.    Admit.

11.    Admit in part; Defendants deny that Plaintiff correctly defined the non-competition agreement, and Defendants deny that the non-competition agreement contains a legally enforceable liquidated damages provision. Defendants also deny that the Non-competition Agreement was attached to the Complaint as an Exhibit.

12.    Defendants admit that John Walker worked as a salesman for U.S. Beverage, Inc. until he was forced out of the Company and that Walker would have gained some knowledge regarding the customers with whom he worked; Defendants deny the remaining allegations of Paragraph 12.

13.    Denied.

14.    Denied.

15.    Denied.

16.     Denied.

17.     Denied.

18.     Defendants admit that John Walker is a shareholder; Defendants do not have

        sufficient knowledge to admit or deny whether Walker is a current employee of

        U.S. Beverage.  In fact, U.S. Beverage, Inc. stopped paying Walker a salary in

        July of 2005 and sent him a letter on April 20, 2006, stating that he was being

        terminated.

19.     Denied.

### Count I—Breach of Fiduciary Duty against John Walker

20.      Paragraph 20 states a legal conclusion, which cannot be admitted or denied.

21.     Denied.

22.     Denied.

23.     Denied.

24.     Denied.

### COUNT II – Breach of Non-competition Agreement against John Walker

25.     Denied.

26.     Denied.

27.     Denied.

### COUNT III – Intentional Interference of Business Relations against John Walker and Trident Marketing

28.     Admit.

29.     Denied.

30.     Denied.

31.     Denied.

**COUNT IV – False or Fraudulent Registration of a Trademark**

32.    Defendants admit that Trident Marketing, Inc. submitted a trademark application for its trademark Juice Alive to the USPTO in 2004 and Defendants admit that Walker was an officer and shareholder of U.S. Beverage in 2004; Defendants deny the remaining allegations of Paragraph 32.

33.    Denied.

34.    Admit.

35.    Denied.

36.    Denied.

37.    Denied.

38.    Denied.

**COUNT V—Declaratory Judgment pursuant to 28 U.S.C. § 2201**

39.    Admit.

40.    Defendants deny that Walker was acting on behalf of U.S. Beverage, Inc. when the Juice Alive trademark was registered; Defendants admit the remaining allegations of Paragraph 40.

41.    Denied.

42.    Denied.

43.    Denied.

44.    Paragraph 44 merely summarizes the request for preliminary injunction made by Plaintiff and cannot be admitted or denied.

45.    Denied.

46.    Denied.

4

47.    Denied.

48.    Denied.

49.    Denied.

## AFFIRMATIVE DEFENSES

Defendants John Walker and Trident Marketing, Inc. state the following affirmative defenses to the Complaint filed by U.S. Beverages, Inc.:

I.    This Court lacks personal jurisdiction over Trident Marketing, Inc., because Trident Marketing, Inc. has not done business in the State of Alabama.

II.    The non-competition agreement, as a whole, is unreasonable and overbroad, and therefore, unenforceable in its entirety.

III.    The geographical limits of the non-competition agreement, which include almost all of Alabama and parts of four other states, is unreasonable, and said geographical limitation is unenforceable.

IV.    The three year term of the non-competition agreement, especially in light of the large geographic area, is unreasonable, and said agreement is unenforceable.

V.    Defendants plead the defense of waiver and acquiescence.

VI.    Defendants plead the defense of laches.

VII.    Defendants plead the defense of accord and satisfaction.

VIII.    Defendants assert that the imposition of any punitive damages in the present case would violate the Due Process guarantees found in the Fourteenth Amendment of the *United States Constitution*, as well as contained in the Declaration of Rights found in the *Alabama Constitution of 1901*.

IX.    Plaintiff's claims are barred by the doctrine of unclean hands and/or by the fraudulent and/or wrongful activity of Thomas Clark, III and Grady Kittrell.

X.    Plaintiff by entering into a non-exclusive distribution agreement with Trident Marketing, Inc. to distribute the Juice Alive brand has waived any right to claim that U.S. Beverage, Inc. is the owner of the Juice Alive trademark or brand.

XI.    Plaintiff is estopped from recovering in this action against any party.

XII.    Plaintiff's claims are barred by contributory negligence.

XIII.    Plaintiff's claims are barred by the statute of limitations.

XIV.    Plaintiff has failed to state a claim for which relief may be granted; therefore, Plaintiff's claims are barred by Rule 12(b)(6) of the *Federal Rules of Civil Procedure*.

XV.    Defendants assert that Plaintiff (and its principal shareholders Grady Kittrell and Thomas Clark) committed one or more material breaches of the agreement to purchase Tropical Perfections, Inc.; therefore, Defendant John Walker was excused from performing under the non-competition agreement.

XVI.    Defendants assert that Plaintiff (and its principal shareholders Grady Kittrell and Thomas Clark) committed a material breach of the merger agreement, shareholder agreements and/or Plaintiff's employment agreement with U.S. Beverage, Inc. when U.S. Beverage, Inc. stopped paying Plaintiff for his work or commissions; therefore, Plaintiff was excused from performing under the shareholder agreements, the non-competition agreement, employment agreement, and/or any other obligations that Plaintiff had to U.S. Beverage, Inc. or to the other shareholders.

XVII.   Defendants assert that Plaintiff (and its principal shareholders Grady Kittrell and Thomas Clark) committed a material breach of the merger agreement, shareholder agreements and/or Plaintiff's employment agreement with U.S. Beverage, Inc. when Kittrell and Clark attempted to force Plaintiff into selling his shares in U.S. Beverage and/or attempted to force Plaintiff into giving U.S. Beverage, Inc. exclusive distribution rights for Defendants' Juice Alive brand in seven southeastern states; therefore, Plaintiff was excused from performing under the shareholder agreements, the non-competition agreement, employment agreement, and/or any other obligations that Plaintiff had to U.S. Beverage, Inc. or to the other shareholders.

XVIII.  The principal shareholders of U.S. Beverage abused their position as majority owners of U.S. Beverage and therefore have unclean hands.

XIX.    Plaintiff has brought this frivolous lawsuit in order to limit competition in the market place and/or for anti-competitive reasons in violation of state and federal anti-trust laws.

XX.     Defendants assert that the Juice Alive name was created by John Walker and Ryan Hamner independently of U.S. Beverage, Inc. with the full knowledge and acquiescence of Grady Kittrell and Thomas Clark.

XXI.    Defendants assert that Grady Kittrell and Thomas Clark had refused to allow the resources of U.S. Beverages, Inc. to be used toward the creation of a brand.

XXII.   Because of the Plaintiff's breach of the compensation and/or corporate governance provisions of the merger agreement, the doctrine of in pari delicto excuses Defendants from performance of the non-competition portion of the

7

merger agreement and/or bars Plaintiffs from obtaining damages for the alleged breach of that provision.

XXIII. The non-competition agreement violates Ala. Code (1975) § 8-1-1.

XXIV. Defendants plead that Plaintiff owes Defendants money in the form of a counterclaim, setoff, and/or recoupment, which offset in whole or in party any monies owed by Defendants to Plaintiff.

Defendants John Walker and Trident Marketing, Inc. reserve the right to amend its Answer and to add Affirmative Defenses.

| | |
|---|---|
| **JOHN BUSTER WALKER, II; and** | ) |
| **TRIDENT MARKETING, INC.;** | ) |
| | ) |
| **Counterclaim Plaintiffs** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **U.S. BEVERAGE, INC.;** | ) |
| | ) |
| **Counterclaim Defendant,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **GRADY DOWLING KITTRELL;** | ) |
| **THOMAS GOING CLARK, III; and** | ) |
| **NORMAN"Buddy" TODD;** | ) |
| | ) |
| **Third Party Defendants.** | ) |

## COUNTERCLAIM AND COMPLAINT AGAINST THIRD PARTY DEFENDANTS
(TRO, Preliminary and Permanent Injunctive Relief Requested)

COMES NOW, John B. Walker, II and Trident Marketing, Inc. and state their counterclaim against U.S. Beverage, Inc. and their third party claims against Grady Dowling Kittrell, Thomas Going Clark, III, and Norman "Buddy" Todd, as follows:

8

## PARTIES

1.      Counterclaim Plaintiff John B. Walker, II is over the age of nineteen and a
        resident of the State of Texas.

2.      Counterclaim Plaintiff Trident Marketing, Inc. is a Georgia corporation with its
        principal place of business in Texas.

3.      Counterclaim Defendant U.S. Beverage, Inc. is an Alabama corporation with its
        principal place of business in Montgomery, Alabama.

4.      Third Party Defendant Grady Dowling Kittrell is over the age of nineteen years
        old and is a resident of Montgomery County, Alabama.

5.      Third Party Defendant Thomas Going Clark, III is over the age of nineteen years
        old and is a resident of Montgomery County, Alabama.

6.      Third Party Defendant Norman "Buddy" Todd is over the age of nineteen years
        old and is a resident of Elmore County, Alabama.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because
        there is complete diversity and the amount in controversy of $75,000.00 is
        satisfied.

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because
        this Counterclaim involves one or more federal questions.

9.      Alternatively, this Court has supplemental jurisdiction over these claims pursuant
        to 28 U.S.C. § 1367, because these claims arise out of and/or are related to the
        claims raised in the original Complaint filed by U.S. Beverage, Inc.

9

10.    Venue is proper in the Northern Division of the Middle District of Alabama

pursuant to 28 U.S.C. § 1391(a) & (b).

## FACTS

11.    John Walker has been in the business of selling frozen fruit juice (i.e., slush) drink

machines and products for approximately 11 years.

12.    John Walker started a company known as Tropical Perfections, Inc., which sold

frozen juice ("slush") machines and products to convenience stores and schools.

13.    Before merging with Tropical Perfections, Inc. and hiring John Walker as a

salesman, U.S. Beverage, Inc. was primarily in the "bag in a box" business, which

is a method dispensing soda drinks and fruit juices for use in bars and nightclubs.

14.    Before merging with Tropical Perfections, Inc., U.S. Beverage, Inc. sold

dispensing systems for draught beer and liquor to bars and nightclubs.  U.S.

Beverage also sold machines and products needed to make frozen margaritas and

daiquiris for bars and nightclubs.

15.    Before merging with Tropical Perfections, Inc., the vast majority of the revenues

of U.S. Beverage, Inc. came from sales to bars and nightclubs.

16.    Before merging with Tropical Perfections, Inc. and hiring John Walker as a

salesman, U.S. Beverage, Inc. did not sell frozen fruit juice machines or products.

17.    In January of 2002, John Walker was approached by Grady Kittrell from U.S.

Beverage, Inc. about becoming associated with U.S. Beverage, Inc.

18.    On or about April 24, 2002, John Walker signed several agreements, by which he

merged Tropical Perfections, Inc. into U.S. Beverage, Inc. in exchange for 33% of

the shares of U.S. Beverage, Inc. and an agreement to work for U.S. Beverage,

Inc. as a salesman.  (A copy of the merger and shareholder agreements are attached hereto as "Exhibit A".)

19.    All of the agreements signed by Walker to execute the merger were drafted by U.S. Beverage, Inc. and/or its attorney.

20.    At no time before, during, or after the merger, did John Walker sign any contract or otherwise agree to U.S. Beverage's ownership of any intellectual property that he developed using his own time and resources, while in the employ of U.S. Beverage, Inc.

21.    At the time of the merger, U.S. Beverage, Inc. and its two other shareholders Grady Kittrell and Thomas Clark also agreed that John Walker's salary could not be reduced without his agreement.  (Exhibit A)

22.    At the time of the merger, all three shareholders in U.S. Beverage, Inc. were on an equal fixed salary, and they each received equal draws from the company.

23.    In October of 2003, Grady Kittrell and Thomas Clark forced John Walker to take a sizable salary cut, telling Walker that they (as owners of a majority of the company stock) would cut his salary with or without Walker's consent.

24.    At that time, Kittrell and Clark placed Walker on a commission-based salary, while Kittrell and Clark kept their fixed salaries.

25.    At time of the merger, Tropical Perfections, Inc. was selling slush drinks and machines under the brand name "Cool Tropics."  Cool Tropics is a brand name of frozen juice machines and products that was owned by a third party.

26.    After the merger, U.S. Beverage assumed and continued the former Tropical Perfections' business of selling slush drinks and machines under the brand name

"Cool Tropics" to convenience stores and schools. U.S. Beverage did not add a significant new customer base to the pre-merger customer base for Cool Tropics.

27.    Shortly after joining U.S. Beverage, Inc., John Walker suggested to Kittrell and Clark that U.S. Beverage invest money and time in creating its own brand for slush drinks.

28.    Grady Kittrell and Thomas Clark rejected John Walker's suggestion of investing in the creation of a new brand.

29.    With the full knowledge of Kittrell and Clark, John Walker and Ryan Hamner worked independently to create a new brand for slush drinks.

30.    Ryan Hamner thought of or created the name "Juice Alive" and the initial logo designs for "Juice Alive".

31.    John Walker and Ryan Hamner agreed to work together to create the Juice Alive brand, and they formed a Georgia company Trident Marketing, Inc. to develop the Juice Alive brand and/or trademark.

32.    Ryan Hamner registered the domain name www.juicealive.com.

33.    U.S. Beverage, Inc. did not contribute toward the costs of developing the Juice Alive brand and/or the www.juicealive.com website.

34.    U.S. Beverage, Inc. was aware in April of 2004 of the creation of the www.juicealive.com website by Ryan Hamner for Trident Marketing, Inc.

35.    After developing www.juicealive.com in April of 2004, Ryan Hamner offered to help U.S. Beverage, Inc. to develop its own website.

36.    In October 2004, Trident Marketing, Inc. and U.S. Beverage, Inc. agreed to work together on a direct mail solicitation in order to sell juice under the Juice Alive brand to day care centers.

37.    In October 2004, Trident Marketing, Inc. paid the cost of obtaining a list of daycare centers in the southeast U.S.

38.    In October 2004, Trident Marketing, Inc. agreed to allow U.S. Beverage, Inc. to solicit and/or distribute "Juice Alive" juice to daycare centers located in Alabama, Arkansas, Mississippi, and small part of Texas.

39.    In October 2004, Trident Marketing, Inc. directly solicited and/or sold "Juice Alive" juice to daycare centers in Georgia, Florida, South Carolina, and the remaining part of Texas.

40.    John Walker referred a number of sales leads to U.S. Beverage, Inc. from the www.juicealive.com website for customers from the sales area assigned by Trident Marketing, Inc. to U.S. Beverage, Inc.

41.    Trident Marketing, Inc. applied to the U.S. Patent & Trademark Office for a federal trademark for Juice Alive, which was granted on December 13, 2005.  (A copy of the U.S. Trademark Registration for Juice Alive is attached hereto as "Exhibit B.")

42.    Sometime in 2005, U.S. Beverage, Inc. was given a cease and desist letter terminating its distributorship for the Cool Tropics brand.

43.    After U.S. Beverage lost its Cool Tropics distributorship, Trident Marketing, Inc. agreed to give U.S. Beverages a non-exclusive distributorship to sell the Juice Alive brand in its existing sales territories.

44.  At all times, the Juice Alive frozen juice concentrate product was manufactured by Supreme Manufacturing Company, Inc.  Trident Marketing, Inc. provided the labels for the product.

45.  On or about November 18, 2005, Tom Clark faxed a letter to Gary Dukes at Supreme Manufacturing Company, Inc. that stated:

> "We have reached an agreement with Juice Alive to start distribution of the Juice Alive brand in our 100% juice products.  Please let the signed fax serve as official authorization for you to begin selling U S Beverages, Inc. the Juice Alive products with a $1.20 increase per case to be paid to Juice Alive."

(A copy of the faxed letter is attached hereto as "Exhibit C")

46.  In July 2005, U.S. Beverage, Inc. was having financial problems, and its three shareholders agreed to temporarily stop receiving any compensation from the company for 90 days.

47.  Subsequently, Walker was told by Grady Kittrell that he would not be going back on the payroll of U.S. Beverage, Inc., unless Walker agreed to a buy-out of his shares in the company and Trident Marketing, Inc. agreed to give U.S. Beverage, Inc. an exclusive distributorship for Juice Alive in seven southeastern states.

48.  When Trident Marketing, Inc. and Walker refused to give an exclusive distributorship for Juice Alive to U.S. Beverage, Inc., Kittrell and Clark refused (1) to reinstate Walker's salary, (2) to pay him accrued sales commissions, and (3) to reimburse Walker for his expenses associated with working as a salesman for U.S. Beverage, Inc.

49.  Walker is due to be paid his salary, sales commissions, and his share of company profits from July 2005 until present.

14

50.  In March or early April 2006, Attorneys acting on behalf of Trident Marketing, Inc. and Walker prepared a formal distributorship agreement, which would have given exclusive distribution rights to U.S. Beverage, Inc. for Alabama, Arkansas, Mississippi, and parts of Georgia. U.S. Beverage rejected the proposed distributorship agreement because the sales area was not as large as Kittrell and Clark had demanded.

51.  Efforts continued until April 2006 toward reaching a buy-out agreement for Walker and a distributorship agreement for U.S. Beverage, Inc. to sell Juice Alive in certain areas, when negotiations between the parties totally broke down.

52.  On or about April 20, 2004, an attorney for U.S. Beverage, Inc. sent a letter to Walker by its attorney telling Walker that U.S. Beverage would be terminating his employment and cancelling Walker and his family's healthcare insurance (A copy of the letter is attached hereto as "Exhibit D").

53.  At the time of the April 20, 2004 letter, Kittrell and Clark knew that Walker's spouse was eight month's pregnant.

54.  In response to said letter, Walker had to purchase private health insurance for his family at significant cost.

55.  In May of 2006, a representative from Supreme Manufacturing Company, Inc. told Walker that U.S. Beverage had notified Supreme Manufacturing that it would no longer be purchasing Juice Alive brand products and that it was switching to the "Fruzars" brand for slush and/or juice products.

56.  On May 15, 2006, Trident Marketing, Inc. terminated its distributorship agreement with U.S. Beverage, Inc. and sent via its attorney in Houston, Texas, a

cease and desist letter to U.S. Beverage, Inc. demanding that it stop using the Juice Alive brand and/or trademark.  (A copy of the cease and desist letter is attached as "Exhibit E")

57.    Since then, U.S. Beverage, Inc. has continued to use the Juice Alive brand name on frozen drink machines and product.

58.    U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, and Norman "Buddy" Todd have falsely asserted that U.S. Beverage, Inc. owns the Juice Alive brand and trademark.

59.    U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, and Norman "Buddy" Todd have sent e-mails and/or letters to prospective customers of Juice Alive in Mississippi falsely asserting that it owns the Juice Alive trademark and telling those prospective customers that they should not do business with John Walker or Trident Marketing, Inc. (A copy of the letter is attached hereto as "Exhibit F".)

60.    U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, and Norman "Buddy" Todd have disrupted Juice Alive's participation in a trade show in North Carolina by making false allegations about U.S. Beverage's ownership of the Juice Alive trademark.

61.    U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, and/or its agents have sent a letter to Dispensing Systems, Inc. in Tucker, Georgia, threatening to sue Dispensing Systems, Inc., if said company enters into a distributorship agreement for the Juice Alive brand with Trident Marketing, Inc.

62.    U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, and its other agents have intentionally exaggerated and misrepresented the nature of Walker's non-

competition agreement with U.S. Beverage, Inc. to customers, potential customers, and/or business associates of Walker and/or Trident Marketing, Inc.

63. The non-competition agreement states that Walker "shall not work in a competing business for a period of three years from the date [he] left U.S. Beverage employment, within a geographical range of 200 miles of Montgomery, Alabama." (A copy of the Non-Competition Agreement is attached hereto as Exhibit G.)

64. Walker is not employed and has not been employed by a "competing business" located within 200 miles of Montgomery, Alabama.

65. Because wrongful conduct by U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, and Norman Todd has taken place in other states and/or damage has occurred from said wrongful conduct in other states, the laws of Georgia, Mississippi, and North Carolina as regards intentional interference with business relationships and/or contracts, trade libel, and defamation may apply in this case.

## COUNT I – TRADEMARK INFRINGEMENT

66. Counterclaim Plaintiffs re-allege and incorporate herein the previous allegations of this Counterclaim and Third Party Complaint.

67. Trident Marketing, Inc. markets frozen juice machines, juice products, and other related items using the Juice Alive trademark.

68. Trident Marketing, Inc. created, developed, and owns the Juice Alive trademark.

69. Ryan Hamner, a former shareholder in Trident Marketing, Inc., thought of the name Juice Alive and designed the original logo for Juice Alive.

17

70.    Trident Marketing, Inc. applied for trademark registration for the Juice Alive trademark on or about September 6, 2004, with the U.S. Patent and Trademark Office.

71.    The USPTO published the Juice Alive trademark for opposition on or about September 20, 2005.

72.    U.S. Beverage, Inc. did not file an opposition to the issuance of the trademark with the USPTO.

73.    On or about December 13, 2005, the USPTO issued a trademark registration to Trident Marketing, Inc. with registration number 3027833. (Exhibit B)

74.    U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, and Norman "Buddy" Todd were aware of the independent development of the Juice Alive brand by John Walker and Ryan Hamner through the company formed by Walker and Hamner Trident Marketing, Inc.

75.    On or about November 18, 2005, U.S. Beverage, Inc. entered into a non-exclusive distribution agreement with Trident Marketing, Inc. to use the Juice Alive brand and/or trademark.

76.    On or about May 15, 2006, Trident Marketing, Inc. terminated its distributorship agreement with U.S. Beverage, Inc. and sent a cease and desist letter to U.S. Beverage, Inc. demanding that U.S. Beverage, Inc. stop using the Juice Alive trademark.

77.    After receiving the cease and desist letter, U.S. Beverage, Inc. has continued to use the Juice Alive trademark on frozen drink machines and related products.

78.   U.S. Beverage, Inc. Grady Kittrell, Thomas Clark, and Norman "Buddy" Todd have falsely asserted that U.S. Beverage, Inc. owns the Juice Alive trademark.

79.   U.S. Beverage, Inc. Grady Kittrell, Thomas Clark, and Norman "Buddy" Todd have attempted to misappropriate the Juice Alive trademark.

80.   U.S. Beverage, Inc. Grady Kittrell, Thomas Clark, and Norman "Buddy" Todd have infringed upon the trademark rights of Trident Marketing, Inc. to the Juice Alive trademark in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125.

81.   Trident Marketing, Inc. has been damaged and/or suffered economic loss as the result of the trademark infringement described above and the false assertions of ownership of the Juice Alive trademark made by Counterclaim Defendants.

82.   The value of the Juice Alive trademark has been diluted and/or lessened as the result of the actions of Counterclaim Defendants.

83.   Trident Marketing, Inc. has also been forced to engage the services of multiple attorneys to protect its trademark rights and/or to prosecute this Counterclaim for trademark infringement and/or dilution.

WHEREFORE, Trident Marketing, Inc. demands judgment against Counterclaim Defendants U.S. Beverage, Inc., Thomas Clark, Grady Kittrell, and Norman "Buddy" Todd for the following:

(a) Compensatory Damages;

(b) Statutory Damages under 15 U.S.C. § 1125;

(c) Declaratory judgment finding that Trident Marketing Inc. and not U.S. Beverage, Inc. owns valid federal trademark and/or trademark rights for Juice Alive;

(d) Treble Damages;

(e) Attorney's Fees; and

(f) Injunctive relief in the form of a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction pursuant to 15 U.S.C. §§ 1114, 1116, & 1125.

## COUNT II – SLANDER, DEFAMATION AND/OR TRADE LIBEL

84. Counterclaim Plaintiffs re-allege and incorporate herein the previous allegations of this Counterclaim and Third Party Complaint.

85. U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, and Norman "Buddy" Todd have falsely accused John Walker and/or Trident Marketing, Inc. of misappropriating and/or taking the Juice Alive brand or trademark from U.S. Beverage, Inc.

86. U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, and Norman "Buddy" Todd have falsely accused John Walker of violating the non-competition agreement referenced herein above.

87. U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, and/or Norman "Buddy" Todd have made these false accusations to customers, business associates, and potential customers of Walker and/or Trident Marketing, Inc. in the form of e-mails, letters, and oral statements.

88. On or about June 21, 2006, Thomas Clark made false statements regarding John Walker and/or Trident Marketing, Inc. at a trade show in North Carolina.

89. U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, and Norman "Buddy" Todd know or should have reason to know that these allegations are false.

90.    U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, and Norman "Buddy" Todd have made these false allegations for the purpose of damaging and/or harming John Walker and/or Trident Marketing, Inc.

91.    John Walker and Trident Marketing, Inc. have lost business and been economically harmed by these false allegations.

92.    John Walker's personal reputation with his customers, business associates, potential customers, and others in the community have been harmed by these false statements.

WHEREFORE, Trident Marketing, Inc. and John Walker demand judgment against Counterclaim Defendants U.S. Beverage, Inc., Thomas Clark, Grady Kittrell, and Norman "Buddy" Todd for the following:

   (a) Compensatory Damages;

   (b) Punitive Damages;

   (c) Injunctive relief;

   (d) Court costs, and

   (e) Such other relief as the Court or jury may find applicable.

## COUNT III – INTENTIONAL INTERFERENCE WITH CONTRACTS OR BUSINESS RELATIONSHIPS

93.    Counterclaim Plaintiffs re-allege and incorporate herein the previous allegations of this Counterclaim and Third Party Complaint.

94.    Trident Marketing, Inc. and John Walker have business relationships and/or contracts with Dispensing Systems, Inc. of Tucker, Georgia.

95.  Trident Marketing, Inc. and John Walker have business relationships and/or contracts with other customers and/or potential customers for the Juice Alive brand.

96.  U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, and Norman "Buddy" Todd have intentionally interfered with the business relationships and/or contracts of Trident Marketing, Inc. and/or John Walker.

97.  U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, and Norman "Buddy" Todd have threatened litigation against and made false statements to Dispensing Systems, Inc. and/or other customers or potential customers of Trident Marketing, Inc. and/or John Walker.

98.  U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, and Norman "Buddy" Todd have interfered with the business relationships and/or contracts for the express purpose of harming and/or damaging Trident Marketing, Inc. and/or John Walker.

99.  U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, and Norman "Buddy" Todd have taken these actions in order to misappropriate or steal the Juice Alive brand or trademark.

100.  U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, and Norman "Buddy" Todd have interfered with customers and/or potential customers of Trident Marketing, Inc. and/or John Walker (and caused harm to Counterclaim Plaintiffs) in at least three states: Georgia, Mississippi, and North Carolina.

WHEREFORE, Trident Marketing, Inc. and John Walker demand judgment against Counterclaim Defendants U.S. Beverage, Inc., Thomas Clark, Grady Kittrell, and Norman "Buddy" Todd for the following:

22

(a) Compensatory Damages;

(b) Punitive Damages;

(c) Injunctive relief;

(d) Court costs, and

(e) Such other relief as the Court or jury may find applicable.

## COUNT IV—BREACH OF CONTRACT AS TO AGREEMENTS WITH JOHN WALKER

101.   Counterclaim Plaintiffs re-allege and incorporate herein the previous allegations of this Counterclaim and Third Party Complaint.

102.   On or about April 24, 2002, John Walker agreed to merge his company Tropical Perfections, Inc. into U.S. Beverage, Inc. in exchange for 33% of the shares of U.S. Beverage, Inc. and certain other agreements as to the manner in which U.S. Beverages, Inc. would operate after the merger.

103.   As pre-existing shareholders in U.S. Beverage, Inc., Grady Kittrell and Thomas Clark agreed "to make Mr. Walker an equal shareholder in U.S. Beverage with all the same rights, titles, and interests that Mr. Kittrell and Mr. Clark had previously enjoyed." (See "Minutes of Special Meeting of the Shareholders of U.S. Beverage, Inc." dated April 24, 2002—attached hereto as part of Exhibit A)

104.   As part of the merger, it was agreed that Walker would be employed as a salesman by U.S. Beverage, Inc.

105.   Walker was concerned about being a minority owner of the new company and sought agreements to be included in the merger deal to protect his rights as a minority shareholder and/or as an employee.

106.   More particularly, Kittrell and Clark agreed that:

"The stockholders shall jointly manage the business. Any increase in compensation shall require a two-thirds vote of the shares of outstanding stock in the corporation. Any increase shall apply to all shareholders equally. Any decrease in compensation would require unanimous vote of all shares of the outstanding stock in the corporation." (Exhibit A)

107.    In breach of the merger agreement, Kittrell and Clark have not treated Walker as an equal partner in U.S. Beverage, Inc.

108.    Kittrell and Clark decreased Walker's salary and/or compensation without Walker's consent.

109.    Kittrell and Clark have given themselves pay raises, which did not apply to Walker.

110.    Kittrell and Clark have abused their joint power as together owning 66% of the stock in the company.

111.    Kittrell and Clark forced Walker to change from a fixed salary to a commission based salary.

112.    Kittrell and Clark have breached the merger agreement and/or related shareholder agreements.

113.    In July of 2005, Kittrell and Clark chose to eliminate Walker's salary and compensation altogether.

114.    Kittrell and Clark refused to reinstate Walker's salary unless he agreed to a buy out agreement and/or agreed to give exclusive distribution rights for Juice Alive brand to U.S. Beverage, Inc. for seven southeastern states.

115.    U.S. Beverage, Inc. has failed to pay all of the salary, sales commissions, profits, and/or reimbursable expenses due to Walker.

116. U.S. Beverage, Inc., Kittrell and Clark have breached the merger agreement and/or related shareholder agreements.

117. On or about April 20, 2006, U.S. Beverage, Inc., Kittrell and Clark breached the merger agreement, employment agreement, and/or related shareholder agreement by terminating and/or notifying Walker that it would terminate his family health insurance.

118. In addition, U.S. Beverage, Inc. has refused to pay $60,772.14 that is contractually owed by it to John Walker.

119. John Walker has been damaged and/or suffered harm as the result of the breaches of contract described hereinabove.

WHEREFORE, John Walker demands judgment against Counterclaim Defendants U.S. Beverage, Inc., Thomas Clark, and Grady Kittrell for the following:

(a) Compensatory Damages;

(b) Court costs, and

(c) Such other relief as the Court or jury may find applicable.

## COUNT V—BREACH OF CONTRACT AS TO AGREEMENT WITH TRIDENT MARKETING, INC.

120. Counterclaim Plaintiffs re-allege and incorporate herein the previous allegations of this Counterclaim and Third Party Complaint.

121. U.S. Beverage, Inc. entered into a non-exclusive distributorship agreement with Trident Marketing, Inc. in order to sell Juice Alive brand products.

122. U.S. Beverage, Inc. agreed to pay Trident Marketing, Inc. a licensing fee of $1.20 per case for Juice Alive Products.

123.    U.S. Beverage, Inc. also agreed to be bound by the other terms of the distributorship agreement.

124.    U.S. Beverage, Inc. has failed to pay $3,326.64 to Trident Marketing, Inc. for daycare juice products and point of sale materials purchased by it from Trident Marketing, Inc.

125.    U.S. Beverage has breached the non-exclusive distributorship agreement.

126.    Trident Marketing, Inc. has been damaged and/or harmed by said breach of contract.

WHEREFORE, Trident Marketing, Inc. demands judgment against Counterclaim Defendant U.S. Beverage, Inc. for the following:

(a) Compensatory Damages;

(b) Court costs, and

(c) Such other relief as the Court or jury may find applicable.

## COUNT VI—BREACH OF FIDUCIARY DUTY

127.    Counterclaim Plaintiffs re-allege and incorporate herein the previous allegations of this Counterclaim and Third Party Complaint.

128.    Prior to the merger with Tropical Perfections, Inc., Grady Kittrell and Thomas Clark owned 100% of the shares of U.S. Beverage, Inc.

129.    After the merger, John Walker became owner of 33% of the shares of U.S. Beverage, Inc.

130.    Grady Kittrell and Thomas Clark have acted together in concert in order to harm John Walker.

131.   Kittrell and Clark have lowered Walker's salary and refused to reimburse Walker for business expenses.

132.   Kittrell and Clark have misused corporate funds and other resources to their own benefit.

133.   Grady Kittrell has used the employees of U.S. Beverage, Inc. to assist him with other businesses owned by Kittrell such as a real estate rental business and a mattress store to the detriment of Walker (and to the detriment of U.S. Beverage, Inc).

134.   As of July 2005, Kittrell and Clark stopped paying Walker and told Walker that his salary would not be re-started unless Walker agreed to a buy-out agreement and an exclusive distributorship for the Juice Alive brand with U.S. Beverage, Inc. for seven southeastern states.

135.   In essence, Kittrell and Clark have "locked" Walker out of the business.

136.   Kittrell and Clark have breached the fiduciary duties owed to Walker as a minority shareholder in U.S. Beverage, Inc.

137.   Kittrell and Clark have breached their fiduciary duties owed to U.S. Beverage, Inc. as employees, corporate officers, and shareholders in U.S. Beverage, Inc.

138.   Walker individually and/or as a shareholder in U.S. Beverage, Inc. has suffered damages as the result of the breaches of duty by Kittrell and Clark.

139.   Walker has been denied benefits and/or compensation given to the other shareholders in U.S. Beverage, Inc.

140.    On or about April 20, 2006, Kittrell and Clark breached their fiduciary duties to Walker by terminating his family health insurance and/or notifying Walker that they would terminate his family health insurance.

141.    Walker has been illegally denied access to sales and financial data for U.S. Beverages, Inc.

142.    In bringing this claim, Walker is acting in the best interests of U.S. Beverage, Inc. and should be awarded attorney's fees pursuant to a common fund or private attorney general fund theory.

WHEREFORE, John Walker demands judgment against Counterclaim Defendants Thomas Clark, and Grady Kittrell for the following:

(a) Compensatory Damages;

(b) Punitive Damages;

(c) A full accounting of corporate accounts;

(d) Attorney's Fees;

(e) Court costs, and

(f) Such other relief as the Court or jury may find applicable.

## COUNT VII—DECLARATORY JUDGMENT AS TO NON-ENFORCEABILITY AND/OR CONSTRUCTION OF NON-COMPETITION AGREEMENT

143.    Counterclaim Plaintiffs re-allege and incorporate herein the previous allegations of this Counterclaim and Third Party Complaint.

144.    As part of an agreement to merge Tropical Perfections, Inc. into U.S. Beverage, Inc., John Walker signed a non-competition agreement.

145.    As part of the merger agreement referred to hereinabove, John Walker signed a non-competition agreement, which is attached hereto as Exhibit G.

146.    The portion of the non-competition agreement at issue states: "[Walker] shall not work in a competing business for a period of three years from the date [he] left U.S. Beverage employment, within a geographical range of 200 miles of Montgomery, Alabama." (Exhibit G)

147.    The non-competition agreement is unreasonable and unenforceable in that the affected geographic territory of a 200 mile radius of Montgomery, Alabama, which includes almost all of Alabama and large parts of at least four other states, is overbroad and creates an unreasonable restraint of trade.

148.    The non-competition agreement is unreasonable and unenforceable in that the three year time limit is too long, especially in light of the large geographic area affected.

149.    The non-competition agreement violates *Code of Alabama (1975)* § 8-1-1, as an unreasonable restraint of trade.

150.    The non-competition agreement is unenforceable because it is vague and/or overbroad.

151.    U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, and Norman "Buddy" Todd have misconstrued the proper meaning of the non-competition agreement and adopted an overbroad interpretation of it.

152.    U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, and/or Norman "Buddy" Todd have told school administrators in Mississippi that John Walker and/or Trident Marketing, Inc. is barred from selling juice products anywhere in the State of Mississippi (whether within 200 miles of Montgomery or not).

153. U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, Norman "Buddy" Todd, and/or its agents have told the owners of Dispensing Systems, Inc. in Tucker, Georgia that the non-competition agreement bars Dispensing Systems, Inc. from entering into an agreement to become a distributor of the Juice Alive brand.

154. Alternatively, if the non-competition agreement is enforceable at all, John Walker asserts that a proper construction of the non-competition agreement would only bar him from being employed by a competitor of U.S. Beverage, Inc., which maintains a physical office within 200 miles of Montgomery, Alabama.

155. John Walker asserts that his activities on behalf of Trident Marketing, Inc. located in Katy, Texas do not violate the non-competition agreement.

156. John Walker asserts that the proposed distributorship agreement between Trident Marketing, Inc. and Dispensing Systems, Inc. does not violate the non-competition agreement.

157. The statements made by U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, Norman "Buddy" Todd, and/or its agents regarding the non-competition agreement have harmed John Walker and/or Trident Marketing, Inc.

158. An actual controversy and/or dispute exists among the parties to this case as to whether the non-competition agreement is enforceable and, if so, as to the proper construction of the non-competition agreement.

159. The entry of a declaratory judgment would benefit all parties to this litigation.

WHEREFORE, Counterclaim Plaintiff John Walker respectfully asks this Court to enter a declaratory judgment pursuant to 28 U.S.C. § 2201 finding (a) that the non-competition agreement is unreasonable and unenforceable; or (b) alternatively, construing the non-

competition agreement as only barring Walker from working for or being employed by a competitor of U.S. Beverage, Inc. that is physically located within 200 miles of Montgomery, Alabama for three years. Furthermore, John Walker asks this Court to enter temporary restraining order and/or preliminary injunctive relieve pending the final outcome of this case.

## COUNT VIII—TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTIVE RELIEF, AND PERMANENT INJUNCTIVE RELIEF

160. Counterclaim Plaintiffs re-allege and incorporate herein the previous allegations of this Counterclaim and Third Party Complaint.

161. Counterclaim Plaintiffs Trident Marketing, Inc. and John Walker seek to enjoin Counterclaim Defendants U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, and Norman "Buddy" Todd from: (1) asserting that U.S. Beverage, Inc. owns the trademark rights for Juice Alive; (2) asserting that other persons or customers should not do business with John Walker or Trident Marketing, Inc., because U.S. Beverage, Inc. owns the trademark for Juice Alive; and/or (3) asserting that other persons or customers should not do business with John Walker or Trident Marketing, Inc. due to the non-competition agreement.

162. As the owner of federal trademark registration, Trident Marketing, Inc. is legally presumed to be the owner of the Juice Alive trademark.

163. U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, and Norman "Buddy" Todd are actively using their fabricated trademark claims and/or the non-competition agreement dispute to harm the business and/or reputation of John Walker and Trident Marketing, Inc.

31

164. Counterclaim Plaintiffs have shown a substantial likelihood of success on the merits of the trademark infringement claim, defamation claim, intentional interference with business relationships claim, and the claim for declaratory judgment as to the non-competition agreement.

165. John Walker and Trident Marketing, Inc. will suffer irreparable harm if U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, and Norman "Buddy" Todd are not barred from continuing to falsely claim ownership of the Juice Alive trademark and/or to falsely claim that Walker is violating the non-competition agreement.

166. Because future profits are difficult to calculate, Counterclaim Plaintiffs may have no adequate remedy at law to remedy the damage being done to the business.

167. The public would benefit from an injunction barring the enforcement of the non-competition agreement and/or strictly construing said agreement, because open competition lowers prices and gives customers more options.

168. Public schools would benefit from the additional competition in the frozen fruit drink market.

169. The public would also benefit from the resolution of the trademark dispute, because having two opposing entities claiming the same brand name creates confusion in the market place.

WHEREFORE, John Walker and Trident Marketing, Inc. respectfully request that this Court enter a temporary restraining order against U.S. Beverage, Inc., Grady Kittrell, Thomas Clark, and Norman "Buddy" Todd, and set a hearing for the entry of a preliminary injunction as soon as possible. Furthermore, John Walker and Trident Marketing, Inc. request that the Court enter preliminary and permanent injunctive relief against U.S. Beverage, Inc., Grady Kittrell,

Thomas Clark, and Norman "Buddy" Todd to stop the false accusations of trademark ownership and false accusations regarding Walker's alleged violation of the non-competition agreement currently being made by them.

DATED this the 26 day of June 2006.

Raymond L. Jackson, Jr. (JAC054)
Attorney for John B. Walker, II and
Trident Marketing, Inc.


**OF COUNSEL:**
Raymond L. Jackson, Jr.
Attorney & Cousellor at Law, P.C.
P.O. Box 3575
Auburn, Alabama 36831-3575
(334) 821-0600
(334) 821-1950 (FAX)
rjackson@auburnattorney.com


## JURY DEMAND

John Walker and Trident Marketing, Inc. request that this case be tried to a jury.

OF COUNSEL

## CERTIFICATE OF SERVICE

I certify that on this the 26 day of June 2006 a copy of the foregoing pleading was served upon all counsel of record through the EMCS electronic filing system and by placing said copy in First Class U.S. Mail with postage prepaid to the following addresses:

> Richard H. Gill, Esq.
> C. Nelson Gill, Esq.
> Copeland, Franco, Screws & Gill, P.A.
> P.O. Box 347
> Montgomery, AL 36101-0347

OF COUNSEL