```
 1            US BEVERAGE, INC.,
 2                Plaintiff,
 3                   v.
 4   JOHN BUSTER WALKER, II, and TRIDENT MARKETING,
 5                   INC.,
 6                Defendants.
 7   ----------------------------------------------
 8   JOHN BUSTER WALKER, II, and TRIDENT MARKETING,
 9                   INC.,
10           Counterclaim Defendants,
11                   and
12   GRADY DOWLING KITTRELL, THOMAS GOING CLARK,
13        III, and NORMAN "BUDDY" TODD,
14           Third Party Defendants.
15
16             CIVIL ACTION NO.
17              2:06-CV-496-SRW
18
19
20
21   DEPONENT:   Norman Todd
22   DATE:   September 15, 2006
23
```

```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF ALABAMA
                     NORTHERN DIVISION

US BEVERAGE, INC.,
          Plaintiff,
vs.
JOHN BUSTER WALKER,
II, and TRIDENT            CIVIL ACTION NO.
MARKETING, INC.,
          Defendants.      2:06-CV-496-SRW
------------------------
JOHN BUSTER WALKER,
II, and TRIDENT
MARKETING, INC.,
          Counterclaim
          Plaintiffs,
vs.
US BEVERAGE, INC.,
          Counterclaim
          Defendant,
and
GRADY DOWLING
KITTRELL, THOMAS
GOING CLARK, III, and
NORMAN "BUDDY" TODD,
          Third Party
          Defendants.

        *    *    *    *    *    *

         DEPOSITION OF NORMAN TODD,
    taken pursuant to notice and stipulation on
    behalf of the Defendant/Counterclaim
    Plaintiff, in the Law Offices of Copeland,
    Franco, Screws & Gill, 444 South Perry Street,
    Montgomery, Alabama, before Tiffany B.
    Beasley, Certified Court Reporter and Notary
    Public in and for the State of Alabama at
    Large, on September 15, 2006, commencing at
    4:23 p.m.
```

2

APPEARANCES

FOR THE PLAINTIFF/COUNTERCLAIM DEFENDANT/THIRD
PARTY DEFENDANTS:

   **C. NELSON GILL, ESQUIRE**

   Copeland, Franco, Screws & Gill

   444 South Perry Street

   Montgomery, Alabama 36104

FOR THE DEFENDANT/COUNTERCLAIM PLAINTIFF:

   **RAYMOND L. JACKSON, JR., ESQUIRE**

   **CLIFF TUNNELL**

   660 North College Street

   Suite D

   Auburn, Alabama 36830

ALSO PRESENT:

   THOMAS GOING CLARK, III

   JOHN BUSTER WALKER, II

---

STIPULATIONS

It is stipulated and agreed by and between counsel representing the parties that the deposition of **NORMAN TODD** may be taken before Tiffany B. Beasley, Certified Court Reporter and Notary Public in and for the State of Alabama at Large, without the formality of a commission; and all formality with respect to other procedural requirements is waived; that objections to questions, other than objections as to the form of the questions, need not be made at this time, but may be reserved for a ruling at such time as the deposition may be offered in evidence or used for any other purpose by either party as provided by the Federal Rules of Civil Procedure.

It is further stipulated and agreed by and between the parties hereto and the witness, that the signature of the witness to this deposition is hereby waived.

---

4

INDEX

| EXAMINATION | Page |
|---|---|
| MR. JACKSON | 5 |

| EXHIBITS | | Page |
|---|---|---|
| 1 | E-mails between Amy Murphy and Buddy Todd, various dates, Bates-Stamped US Beverage 138 | 37 |
| 2 | E-mails between Amy Murphy and Buddy Todd, various dates, Bates-Stamped US Beverage 140 | 41 |
| 3 | Typewritten Notes of Mr. Todd, dated 7/11/2006, Bates-Stamped US Beverage 141 | 45 |
| 4 | Memo from Buddy Todd to Child Nutrition Directors, undated, Bates-Stamped US Beverage 137 | 56 |
| 5 | E-mail with Attached Letter between Amy Murphy and John Walker, dated June 9, 2006 | 68 |

29

1  A.  Not returning them, because once you take them
2      off the machine, they're not any good anymore.
3  Q.  Okay. Do you know if those materials have
4      been thrown away or destroyed?
   A.  I would assume they were thrown away. I mean,
6      that would be -- that would be my guess. I
7      don't know. I'm not there when it's
8      happening.
9  Q.  But you're aware that your company received a
10     cease-and-desist notice requiring the removal
11     of Juice Alive point-of-sale materials;
12     correct?
13         MR. GILL: Object to the form.
14 A.  I never seen this letter until I received my
15     lawsuit. But I was instructed to change out
16     the POS on the machines, sir, have it done.
17 Q.  When were you instructed to do that?
18 A.  Sometime after the Alabama show, sir. I don't
19     know the exact dates.
20 Q.  What were you told about why US Beverage chose
21     to change to the Fruzer brand?
22         MR. GILL: Object to the form.
23 A.  Basically, I wasn't told anything about it.

30

1      The only thing -- the only knowledge that I
2      have about it was the knowledge that I
3      obtained listening to the conversation between
4      the two of them the night at dinner after the
5      Alabama show was over.
6  Q.  What do you recall about them discussing the
7      Fruzer brand or implementing --
8  A.  The Fruzer brand wasn't discussed at that
9      moment. That wasn't even in existence.
10 Q.  Okay. Well, what conversation are you
11     referring to at dinner between -- I guess, you
12     were talking about John Walker --
13 A.  I'm confused -- what was the question again?
14 Q.  I was asking you about what -- what you heard
15     or understood was the -- I guess, the
16     reasoning behind shifting to the Fruzer brand
17     for US Beverage.
18 A.  Well, it started, like I said, at the dinner
19     table between -- the conversation between John
20     Walker and Tom Clark, when John Walker
21     expressed to Tom that he had outside companies
22     that were willing to pay him more for the
23     product than what US Beverage had agreed to

31

1      pay him for the product, and if US Beverage
2      didn't compromise or come to some kind of
3      medium on a higher paying price per label for
4      the boxes, that he was going to have to go
5      with these other companies so that he could
6      make more money.
7  Q.  Anything else you remember being told or
8      learning about, you know, the shift from Juice
9      Alive to Fruzers by your company?
10 A.  No, sir.
11 Q.  Who introduced you to the Fruzers brand?
12 A.  Who introduced me to the Fruzers brand?
13 Q.  Yes.
14 A.  Tom Clark.
15 Q.  How did he do that?
16 A.  I went with Tom Clark to the BLR agency and
17     went over the artwork with...
18 Q.  When did that occur?
19 A.  I'm not sure what month, sir. I just know it
20     was sometime after that -- the Alabama show.
21 Q.  Did the BLR agency prepare the POS materials
22     for Fruzers?
23 A.  They created the artwork for it, sir. I'm not

32

1      sure who actually prepared it.
2  Q.  And, I guess, the artwork would have been sent
3      to a printer?
4  A.  Yes, sir.
5  Q.  What sort of POS materials does US Beverage
6      have for Fruzers?
7  A.  Same as I've already depicted for you.
8  Q.  How do you think the Fruzers brand compares in
9      success in the marketplace to the Juice Alive
10     brand?
11         MR. GILL: Object to form.
12 A.  I think that the label itself is more
13     appealing to the children because it's more of
14     a child -- I mean, it's more of a -- it's more
15     attractive to me for a child than what --
16     Juice Alive. I mean, that's my opinion.
17 Q.  So you're happy with the Fruzers brand as a
18     sales manager for US Beverage?
19         MR. GILL: Object to the form.
20 A.  I would say at the present moment, yes.
21 Q.  Do you think the Fruzers brand is a better
22     brand name than Juice Alive?
23         MR. GILL: Object to the form.

33

| | | |
|---|---|---|
| 1 | A. | I can't speculate. I'm not going to make a |
| 2 | | speculation on that. |
| 3 | Q. | But you're in the business, aren't you? |
| 4 | A. | I'm in the business, but I've just answered |
| 5 | | that same question. |
| 6 | Q. | Are you personally aware of any customers that |
| 7 | | US Beverage has lost because of John Walker? |
| 8 | A. | Yes, sir. |
| 9 | Q. | Okay. Can you list those? |
| 10 | A. | Lincoln County, Mississippi. |
| 11 | | THE REPORTER: I'm sorry. Repeat. |
| 12 | | THE WITNESS: Lincoln. |
| 13 | Q. | Okay. |
| 14 | A. | Oxford, Mississippi. |
| 15 | Q. | Okay. |
| 16 | A. | The Choctaw Indian Tribal School in |
| 17 | | Philadelphia, Mississippi. |
| 18 | Q. | Okay. |
| 19 | A. | Pontotoc County School System in Mississippi. |
| 20 | Q. | Okay. |
| 21 | A. | That's all I can think of, sir. |
| 22 | Q. | Okay. When did US Beverage lose Lincoln |
| 23 | | County as a customer? |

34

| | | |
|---|---|---|
| 1 | A. | In August '06. |
| 2 | Q. | Okay. Why did US Beverage lose Lincoln County |
| 3 | | as a customer? |
| 4 | A. | Because a -- an agent of John Walker's -- I'm |
| 5 | | not sure if it was Scotty West or if it was |
| 6 | | actually Mr. Walker himself, went to |
| 7 | | Beau Simonson, which is the CND director for |
| 8 | | the school system there, and attempted to sell |
| 9 | | Juice Alive product to Mr. Simonson, at which |
| 10 | | time they instructed Mr. Simonson that he was |
| 11 | | going to have to bid the product out because |
| 12 | | of his expenditures on the -- on the |
| 13 | | particular product. And Mr. Simonson didn't |
| 14 | | notify US Beverage that there was a bid |
| 15 | | situation. So when I -- I received a phone |
| 16 | | call a week after I had called to check on |
| 17 | | Mr. Simonson and see how everything was going, |
| 18 | | and his secretary expressed to me that |
| 19 | | everything was fine. |
| 20 | | I received a phone call the |
| 21 | | week after that from him telling us that he |
| 22 | | had changed companies, that he had went with |
| 23 | | Juice Alive, and that we needed to pick up our |

35

| | | |
|---|---|---|
| 1 | | machines. So two days later, I picked the |
| 2 | | machines up. |
| 3 | Q. | Is it you understanding that there was a bid |
| 4 | | process for Lincoln County school? |
| 5 | A. | According to Mr. Simonson, after he rechecked |
| 6 | | and called me back the third time, he told me |
| 7 | | that there was a bid process and that all he |
| 8 | | had to do was put it into the local paper, I |
| 9 | | think he said, two weeks prior to the bid |
| 10 | | opening. I'm not sure of the exact time |
| 11 | | frame, but that was all he had to do. That |
| 12 | | was -- and that's what he said he did. |
| 13 | Q. | And you blame John Walker for US Beverage not |
| 14 | | bidding on the Lincoln County -- |
| 15 | A. | I don't blame him for US Beverage not bidding |
| 16 | | on the contract, but my personal opinion, I |
| 17 | | feel that he shouldn't be competing against US |
| 18 | | Beverage in known US Beverage accounts when |
| 19 | | he's -- as far as I'm told, is still an |
| 20 | | officer of this corporation. |
| 21 | Q. | Do you know if Lincoln County is within |
| 22 | | 200 miles of Montgomery, Alabama? |
| 23 | A. | Sir, I don't know how many miles it is from |

36

| | | |
|---|---|---|
| 1 | | here to there. |
| 2 | Q. | Do you know what part of Mississippi Lincoln |
| 3 | | County is? |
| 4 | A. | It's close to the Louisiana line. |
| 5 | Q. | Would that be roughly southwest? |
| 6 | A. | Yes, sir. |
| 7 | Q. | Okay. What about Oxford, Mississippi, |
| 8 | | schools? Is that the school system we're |
| 9 | | talking about, Oxford, Mississippi? |
| 10 | A. | Yes, sir. Oxford City schools -- Separate |
| 11 | | School District. |
| 12 | Q. | Why did US Beverage lose the -- Oxford as a |
| 13 | | customer? |
| 14 | A. | Because either -- once again, either John |
| 15 | | Walker or Scotty West approached Amy Murphy, |
| 16 | | which is the CND at Oxford Separate School |
| 17 | | District, told her that they could promise her |
| 18 | | POS material, a lower price on the product, |
| 19 | | new machines, and if she would transfer to -- |
| 20 | | to use their product, to use Juice Alive |
| 21 | | product, and she chose to do so. She didn't |
| 22 | | put it out for bid; she just swapped. I got |
| 23 | | an e-mail from her, which you have that |