**From:** Scott Smith
**Sent:** Tuesday, February 21, 2006 3:44 PM
**To:** John Walker
**Subject:** RE: Contract for US Beverage

John,

I made the change and forwarded the draft to US Beverage's counsel for review. I'll let you know as soon as I receive any comments from them.

-KSS

-----Original Message-----
**From:** John Walker [mailto:julepguy@aol.com]
**Sent:** Tuesday, February 21, 2006 9:19 AM
**To:** Scott Smith
**Subject:** RE: Contract for US Beverage

Scott this looks good. We can probably do without the liquidated damages provision as I feel that it is covered in the buyout contract. If you could remove that note on that section you can then forward this document to US Beverage's attorney via e-mail or mail whichever is necessary.

US Beverage's Attorney is
Charles W. Edmondson, P.C.
Attorneys At Law
621 S. Perry Street
Montgomery, AL 36104-5819
334-265-9034
cedmondson@bellsouth.net

Thanks,
JW

-----
**From:** Scott Smith [mailto:SSmith@jdnlaw.com]
**Sent:** Monday, February 20, 2006 12:19 PM
**To:** John Walker
**Cc:** John Walker
**Subject:** RE: Contract for US Beverage

John,

Sorry for the delay in getting this draft to you. Please take a look at the agreement and let me know if you have any questions or comments. I think we could also possibly tie into the value of your stock repurchase from USB for a liquidated damages provision, if necessary. Just let me know what you think.

-Scott

-----Original Message-----
**From:** John Walker [mailto:johnwalker@juicealive.net]
**Sent:** Saturday, February 11, 2006 5:10 PM
**To:** Scott Smith
**Cc:** johnwalker@juicealive.net
**Subject:** Contract for US Beverage

Scott, I have another distributor in Alabama who I will also need to assign a distributor contract. I would prefer to just provide you with the key differences and let you make the revisions as opposed to trying to do it myself. This distribution agreement is being implemented in conjunction with the repurchase of my shares of stock in US Beverage and my resignation of Vice President and 33% shareholder. I am taking into consideration the value of

6/12/2006

# DISTRIBUTION AGREEMENT

This Distribution Agreement (the "Agreement") is made as of _____, 2006, by and between Trident Marketing, Inc., a Georgia corporation having an office at 23611 Litchfield Bend Lane, Katy, Texas 77494 (the "COMPANY"), and US Beverage, Inc., a _____ corporation having a principal place of business located at 844 Lagoon Commercial Boulevard, Montgomery, Alabama 36117 (the "DISTRIBUTOR"), who, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged for all purposes, agree as follows.

1. Appointment

    1.1    COMPANY hereby appoints and authorizes DISTRIBUTOR as its exclusive distributor of 100% fruit juice beverages (the "Product") dispensed under the name "Juice Alive" in the territories set forth on Schedule 1.1 attached hereto (the "Territories"). DISTRIBUTOR hereby accepts such appointment and agrees to sell the Product hereunder only under the trademarks of the COMPANY.

    1.2    COMPANY agrees not to appoint any other distributor of Products for resale in the Territories.

    1.3    DISTRIBUTOR shall have the right to market the Product on a non-exclusive basis outside of the Territories only upon obtaining prior written consent of the COMPANY.

    1.4    DISTRIBUTOR agrees to obtain all of its requirements for Product solely from such Product supplier(s) designated by COMPANY from time to time. DISTRIBUTOR may also, at its election, purchase dispensing machines for the Product from COMPANY or its designated supplier.

    1.5    In the event that DISTRIBUTOR is unwilling or unable, for any reason, to service any customer(s) within the Territories, then the COMPANY shall have the right to provide service to such customer(s).

2. Term

DISTRIBUTOR's engagement hereunder shall be deemed to have commenced on the date of this Agreement and shall continue for an initial term of five (5) years, unless sooner terminated as provided herein. Unless either party gives thirty (30) days advance written notice of its intent to not extend this Agreement, the Agreement shall automatically renew at the end of the initial term or any subsequent renewal term for a period of one (1) year each. Notwithstanding the foregoing, COMPANY may terminate this Agreement at any time and for any reason, upon thirty (30) days written notice to DISTRIBUTOR.

3. DISTRIBUTOR's Status and Responsibility

    3.1    DISTRIBUTOR is an independent contractor and is not an agent, employee, or legal representative of COMPANY, and all persons engaged by DISTRIBUTOR shall be

DISTRIBUTOR's employees, legal representatives, or agents. DISTRIBUTOR is not authorized to do business in COMPANY's name or to otherwise obligate COMPANY in any way. No partnership, joint venture, fiduciary, trust or other legal relationship is intended to be created between COMPANY and DISTRIBUTOR. The relationship between COMPANY and DISTRIBUTOR under this Agreement shall be solely that of vendor and vendee.

3.2     DISTRIBUTOR shall use all commercially reasonable efforts in the development, promotion and resale of the Product to customers in the Territories.

3.3     DISTRIBUTOR agrees not to promote or distribute products manufactured by itself or others in the Territories that are substantially the same as the Product in composition, and DISTRIBUTOR shall not use products manufactured by itself or others in dispensing machines specifically labeled with the Product's name or marks identifying the Product.

3.4     DISTRIBUTOR will provide and maintain at its own expense facilities and qualified personnel sufficient to provide a high standard of service in the sale of the Product to its customers in the Territories.

3.5     DISTRIBUTOR will make no representations or warranties with respect to the Product, except as expressly authorized in writing by COMPANY. DISTRIBUTOR will not repackage or alter or modify any Product purchased hereunder prior to its resale.

3.6     DISTRIBUTOR may purchase dispensing machines for the Product from COMPANY or provide its own, but DISTRIBUTOR shall use best efforts to label all dispensing machines used for the Product with marketing materials available through the COMPANY or approved prior to use by the COMPANY.

3.7     DISTRIBUTOR will comply with all applicable laws and regulations during the course of performance of this Agreement related to its activities under this Agreement.

3.8     DISTRIBUTOR will defend, indemnify and hold harmless COMPANY from any and all claims, demands, suits or liability arising out of any acts or omissions of DISTRIBUTOR, its employees, appointees, legal representatives and agents hereunder or otherwise in connection with its resale of the Product purchased hereunder, whether based upon breach of contract, negligence, strict liability or otherwise.

3.9     DISTRIBUTOR will avoid activities or practices that may injure the reputation of COMPANY or the Product.

3.10    DISTRIBUTOR agrees not to resell Product purchased from COMPANY to customers outside of the Territories or for delivery outside of the Territories without the prior written consent of the COMPANY.

4. DISTRIBUTOR's Compensation

DISTRIBUTOR's sole compensation in connection with its activities contemplated by this Agreement shall consist of the difference between DISTRIBUTOR's purchase price paid hereunder to COMPANY's designated supplier of Product and the selling price received from DISTRIBUTOR's customers for Product resold to them. COMPANY does not guarantee the marketability of the Product nor the amount of any compensation, if any, DISTRIBUTOR may realize under this Agreement.

5. Certain Information

5.1 From time to time, COMPANY agrees to furnish DISTRIBUTOR with existing information and sales data regarding the Products.

5.2 Upon request of COMPANY, DISTRIBUTOR agrees to furnish COMPANY with any available data reasonably requested by COMPANY with regard to sales of the Product in the Territories.

6. Quantities; Prices; Orders and Payment

6.1 DISTRIBUTOR agrees to send COMPANY written notice in the form of copies of all purchase orders submitted to COMPANY'S designated supplier of Product, setting forth the specific amounts of Product that it desires to purchase hereunder.

6.2 DISTRIBUTOR shall pay to ~~COMPANY~~ [Supplier Keepps ??] a fee of One Dollar and Twenty Cents ($1.20) per case of Product purchased from COMPANY'S designated supplier of Product hereunder. Such fee shall be in addition to the purchase price for Product charged to DISTRIBUTOR by COMPANY'S designated supplier. The purchase price for the Product purchased by DISTRIBUTOR from COMPANY'S designated supplier of Product shall be as established between the DISTRIBUTOR and such supplier.

6.3 COMPANY will invoice ~~DISTRIBUTOR~~ [Supplier Keeps $?] for each order of Product placed with COMPANY'S designated supplier hereunder. All payments shall be made by DISTRIBUTOR to COMPANY, without offset or deduction of any kind, within 30 days of the date of the COMPANY invoice. DISTRIBUTOR shall pay all invoiced amounts in U.S. currency. Any payment not received by COMPANY within that time period shall be considered overdue. TIME IS OF THE ESSENCE for the payment of all COMPANY invoices. In the event that payment of any COMPANY invoice is not received in full within such 30-day period, simple interest shall accrue on the unpaid balance thereof from the date appearing on the invoice at a rate equal to the lesser of eighteen percent (18%) per annum or the highest interest rate chargeable under applicable law.

6.4 DISTRIBUTOR shall notify COMPANY in writing of any errors, discrepancies or disputes with regard to any COMPANY invoice within 30 days of receipt of such invoice. In the absence of such notice, such invoice will be deemed to be correct and DISTRIBUTOR shall be

deemed to have waived any error, discrepancy or dispute of which it was aware or through due diligence could have become aware.

7.   Warranties; Limitations; Indemnities; Remedies

   7.1   EXCEPT AS OTHERWISE SET FORTH HEREIN, COMPANY MAKES NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY WARRANTIES OF MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE. ALL SUCH WARRANTIES ARE HEREBY EXPRESSLY DISCLAIMED BY COMPANY AND WAIVED BY DISTRIBUTOR.

   7.2   Both parties warrant to the other that they have no existing contracts with third parties that would interfere with their full and faithful performance of this Agreement.

   7.3   IN NO EVENT SHALL EITHER PARTY HERETO BE LIABLE TO THE OTHER FOR INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST PROFITS, WITH REGARD TO THE SUBJECT MATTER OF THIS AGREEMENT UNDER ANY CONTRACT, TORT OR OTHER LEGAL OR EQUITABLE THEORY OR OTHERWISE, HOWEVER SUCH DAMAGES MAY BE CAUSED, INCLUDING, WITHOUT LIMITATION, ANY SUCH DAMAGES THAT MAY BE CAUSED BY THE SOLE NEGLIGENCE OF SUCH PARTY. EACH PARTY ACKNOWLEDGES THAT THE OTHER WOULD NOT HAVE ENTERED INTO THIS AGREEMENT IF THEY HAD NOT AGREED TO BE BOUND BY THIS PROVISION.

   7.4   DISTRIBUTOR agrees to indemnify, defend and hold COMPANY and its officers, directors, employees and affiliates harmless from and against any and all liabilities, claims, causes of action, damages, costs and expenses (including, without limitation, costs and expenses of litigation and reasonable attorneys and accountants fees) whatsoever that result from any breach of this Agreement by DISTRIBUTOR or any sale of the Product by DISTRIBUTOR, whether based upon breach of contract, negligence, strict liability or otherwise.

   7.5   COMPANY agrees to indemnify, defend and hold DISTRIBUTOR and its officers, directors, employees and affiliates harmless from and against any and all liabilities, claims, causes of action, damages, costs and expenses (including, without limitation, costs and expenses of litigation and reasonable attorneys and accountants fees) whatsoever that result from any alleged infringement of any US or foreign patent caused by the manufacture, sale or use of any the Product by COMPANY or DISTRIBUTOR.

   7.6   COMPANY and DISTRIBUTOR hereby agree and acknowledge that the exclusivity, noncompetition, non-solicitation and non-disparagement covenants of DISTRIBUTOR set forth herein (including, but not limited to Sections 1.4, 3.3, 3.10 and Article 11) are a material and substantial part of this Agreement; and that COMPANY would not have entered into this Agreement but for the agreement of DISTRIBUTOR to be bound by such covenants. Because of the difficulty of measuring economic losses to COMPANY as a result of the breach of such covenants, and because of the immediate and irreparable damage that would be caused to COMPANY for which it

would have no other adequate remedy, DISTRIBUTOR agrees that in the event of its breach of such covenant, the covenant may be enforced by COMPANY by, without limitation, injunctions and restraining orders. **[Could also include a liquidated damages provision here and tie into the value of the stock repurchase]**

8. <u>Patents; Trademarks and Tradenames</u>

    8.1    COMPANY reserves the right to suspend performance or to terminate this Agreement if it reasonably believes that the manufacture, sale, or use of the Product infringes any United States or foreign patent.

    8.2    DISTRIBUTOR shall not use any trademarks, trade names, slogans, logos or packaging designs (or any similar trademarks, trade names, slogans, logos, or packaging designs) of COMPANY that are related to the Product other than "Juice Alive™" and any other trademark used by COMPANY in connection with its sale of the Product (collectively, the "COMPANY Trademarks"). DISTRIBUTOR acknowledges COMPANY's sole ownership of the COMPANY Trademarks.

    8.3    COMPANY hereby grants DISTRIBUTOR the right and license to use the COMPANY Trademarks in connection with the marketing and sale of the Product for applications in the Territories; <u>provided</u>, <u>however</u>, that COMPANY shall nevertheless retain the right to use the Trademark for the Product for all other applications in the Territories. DISTRIBUTOR shall use the Trademark only in connection with its marketing and resale of the Product in the Territories. All use of the COMPANY Trademarks by DISTRIBUTOR shall inure solely to the benefit of COMPANY. DISTRIBUTOR shall use all commercially reasonable efforts to comply with the rules, regulations and requirements of the United States Patent and Trademark Office with respect to the proper use and display of the COMPANY Trademarks, in order that the validity and integrity of the COMPANY Trademarks be preserved. DISTRIBUTOR agrees that the nature and quality of the Product marketed and sold by DISTRIBUTOR under the COMPANY Trademarks shall conform to reasonable standards set by COMPANY. Upon termination of this Agreement for any reason, DISTRIBUTOR shall cease any use of the COMPANY Trademarks or any trademark that is so similar as to likely cause confusion or uncertainty or to deceive the public.

9. <u>Force Majeure</u>

    9.1    No liability shall result from the delay in performance or nonperformance (other than the obligation to pay for Product shipped) caused by force majeure or circumstances beyond the reasonable control of the party affected, including, but not limited to, Acts of God, fire, flood, war, embargo, any United States or foreign government regulation, direction or request, accident, labor trouble, delays of common carriers, or shortage of or inability to obtain material, equipment or transport, or to produce Product.

    9.2    A party affected by an event of force majeure shall give the other party written notice of such force majeure in reasonable detail as soon as reasonably practicable, including the estimated duration thereof.

9.3    A breach of this Agreement (other than the obligation to pay for Product shipped) by a party that is caused by an event of force majeure shall not give rise to a right of the other party to terminate this Agreement.

10. Termination

10.1    Neither party, by reason of the termination or expiration of this Agreement in conformity with the terms thereof or the nonrenewal of this Agreement for the Product, shall be liable to the other party for compensation, reimbursement, or damages because of the loss of goodwill, anticipated sales, or prospective profits, or because of expenditures, investments, or other matters related to the performance hereunder or to the business of the parties.

10.2    Neither termination nor expiration of this Agreement shall relieve either party from the duty to discharge in full all obligations accrued or due prior to the date thereof.

10.3    Upon termination of this Agreement, DISTRIBUTOR shall surrender to the COMPANY or destroy upon the COMPANY's request, all marketing materials relating to the Product and shall not use products manufactured by itself or others in dispensing machines specifically labeled with the Product's name or marks identifying the Product.

11. Non-Solicitation

Throughout the term of this Agreement and for a period of one (1) year after termination for any reason, DISTRIBUTOR shall not (i) disparage the COMPANY or Product in any way, whether inside or outside Territories, or (ii) solicit, divert or take away, or attempt to divert or take away, the business or patronage of any of the existing Product customers or accounts of Company, or any individual or entity affiliated with the COMPANY.

12. Applicable Law and Arbitration

This Agreement shall be governed exclusively by and construed exclusively in accordance with the laws of the state of Texas and applicable federal laws of the United States.

13. General Conditions

13.1    This Agreement may be executed in one or more counterparts, but shall not be binding upon COMPANY until a copy, signed by the DISTRIBUTOR, is executed by COMPANY. Once it has been so executed, this Agreement shall bind COMPANY, DISTRIBUTOR and their respective permitted successors and assigns.

13.2    This Agreement constitutes a complete statement of the entire understanding and agreement between the parties and merges all prior written and oral statements and agreements between the parties regarding this transaction, if any. Any modification or amendment of this Agreement must be in writing and signed by an authorized officer of both parties. No oral

representations or warranties have been made by the parties hereto or are being relied on by such parties. This Agreement amends and supersedes any and all other terms and conditions of sale of DISTRIBUTOR, wherever contained and however manifested, including any inconsistent terms contained in purchase orders, invoices or similar documentation.

13.3   No waiver of a breach of any of the provisions of this Agreement shall be deemed to be a waiver of any succeeding breach of the same or any other provision of this Agreement.

13.4   Except as otherwise provided herein, neither party may assign this Agreement or any right or obligation under this Agreement and any purported assignment shall be void and ineffective. COMPANY may assign its rights and delegate its performance hereunder, in whole or in part, to any affiliated company or to any successor in interest or transferee of that portion of COMPANY's business that is directly involved in the performance of this Agreement.

14.   Notice

Any notice required or permitted herein shall be delivered by a nationally recognized courier against signed receipt by a person at the address set forth above or at the last known address given by such party to the other party, and shall be deemed delivered upon signature of receipt.

Executed as set forth above.

**COMPANY:**

TRIDENT MARKETING, INC.

By: _____
Name: _____
Title: _____


**DISTRIBUTOR:**

US BEVERAGE, INC.

By: _____
Name: _____
Title: _____

## Schedule 1.1

### Territories

<u>States</u>:

Alabama, Mississippi and Arkansas.

<u>Other Customers</u>:

Spectrum Convenience Stores, Muscogee County Schools and Children's Friend Learning Centers, each within the State of Georgia.