**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| U.S. BEVERAGE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:06-cv-496-MEF |
| | ) | |
| JOHN BUSTER WALKER, II; TRIDENT MARKETING, INC.; et al. | ) ) | |
| | ) | |
| Defendants. | ) | |

**RESPONSE TO DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION**

Comes now Plaintiff U.S. Beverage, Inc. and hereby submits its response to Defendants' Motion for Preliminary Injunction, and shows as follows:

**INTRODUCTION**

Defendants John Walker and Trident Marketing, Inc. ("Defendants") seek a preliminary injunction in regard to one issue, the Juice Alive trademark, and "request that this Court enter a preliminary injunction enjoining U.S. Beverage and its owners from further use or claims of ownership of the 'Juice Alive' trademark." [Brief of Defendants, page 27]. At the outset, it is undisputed that U.S. Beverage has not used Juice Alive at any time since this lawsuit began, as John Walker and/or Trident Marketing have been using it in competition with U.S. Beverage after U.S. Beverage refused to pay the extortion price demanded by its own officer and shareholder. As for claiming ownership of Juice Alive, U.S. Beverage believes, as it always has, that Juice Alive is its property.

Defendants' "motion for preliminary injunction" is more of the same from John Walker, as he essentially contends that he is entitled to do whatever he chooses, while U.S. Beverage should be held hostage in the interim. Defendants appear to view this Juice Alive issue in a vacuum, as if it is some sort of dispute between unrelated people or companies, which it clearly is not. Of course, to do this, Defendants have had to make up their own facts, which they can only support with Mr. Walker's "witness statements".

Certainly, the value of a concocted "witness statement" of a party is limited to begin with; however, when it contradicts the sworn testimony of the same witness, other witnesses or the documents, it cannot have any value. This is why U.S. Beverage took the time to present its brief with support from the sworn testimony of the parties/witnesses and the documents, and why Defendants chose not to, because their factual statements are unsupportable.

While U.S. Beverage realizes that there will be a hearing, and that lengthy briefs have been filed, it does want to point out that Defendants "Statement of Facts" is, in large part, not supported by any competent evidence. For example, in direct relation to the trademark issue, Mr. Walker states:

> Shortly after joining U.S. Beverage, Inc., Walker suggested to Kittrell and Clark that U.S. Beverage invest money and time in creating its own brand for slush drinks. (Walker Witness Statement, par. 12) Grady Kittrell and Thomas Clark rejected Walker's idea of investing in the creation of a new brand. Id.

Of course (in addition to this statement contradicting the testimony of Mr. Clark and Mr. Kittrell), Mr. Walker actually testified in his deposition as follows:

> Q. So you [Mr. Walker] came to them [Grady Kittrell and Tom Clark] and said we think that - or I think that you need to keep - you need to have a brand identity of your own?
>
> A. I felt that it was important (nodding head) --

-2-

> Q. Right.
>
> A. – yes.
>
> Q. And are you saying that they did not feel that was important?
>
> A. I don't think they felt that way, no. I don't think they felt that there was any value in a brand.
>
> Q. They told you they didn't think there was any value in a brand, you're going to testify to that?
>
> A. I can't recall if they specifically said that to me or not, but the feeling that I got was that they were not going to invest the time or the money to create one.
>
> [Walker Depo. at page 176, line 7 - page 177, line 4; see also page 180, lines 20-23].

In any event, Mr. Walker acknowledged that marketing and promoting U.S. Beverage's product was part of his job, which is exactly the purpose of creating a brand.[1] [Walker Depo. at page 178, line 18 - page 179, line 5]. Furthermore, as is discussed in U.S. Beverage's prior brief, the entire premise, even if true, that an officer and 1/3 shareholder can, after receiving the direction to continue to do his job, make sales and market the company's product, decide, based upon his own feelings, that he would like to go out and start his own competing business, in the same business, with no consequences, is simply ludicrous. Even if Mr. Walker truthfully addressed Grady Kittrell and Tom Clark with the proposition that U.S. Beverage should create its own brand, and they rejected that proposition, how does it make any sense that such a rejection would give John Walker the right to go and make up a brand to compete against U.S. Beverage?

It gets worse from this point, with Defendants just fabricating facts about U.S. Beverage

---

[1] Mr. Walker, in fact, states that he was creating the brand for U.S. Beverage. [Walker Depo. at page 145, lines 20-23; page 136, lines 4-9].

-3-

selling Juice Alive products (it has not); U.S. Beverage not contributing toward the costs of developing Juice Alive (it was paying Mr. Walker's salary, among other things), Mr. Walker working "on his own time" (he testified that he was working on his own business while working for U.S. Beverage), U.S. Beverage not claiming ownership of Juice Alive (U.S. Beverage has always claimed it as is evidenced by U.S. Beverage's attempts to buy out Mr. Walker's shares, offering Juice Alive as a conciliation); U.S. Beverage's agreement to distribute Juice Alive for a price (ignoring essentially all of the facts surrounding this, which amounted to extortion by John Walker); John Walker's status as a mere "sales employee" (contradicted by Mr. Walker's testimony and all evidence in the case); and fabricating multiple other facts including falsifying the description of documents ("Exhibit P - Letter from U.S. Beverage attorney officially terminating Walker's status as an officer and employee", which is not what the letter states, nor the result of the shareholder's meeting if Mr. Walker had actually cared to attend).

While U.S. Beverage would like to take the time to address every aspect of what is essentially a non-factual fantasy created by Mr. Walker's "witness statement", it will address these issues, and others at the preliminary injunction hearing.

**U.S. Beverage's Response to Defendants' Juice Alive Argument**

Defendants begin their "legal argument", which is not based upon any supportable facts, by stating:

> U.S. Beverage ignores the fact that a third party Ryan Hamner created the trademark and that Hamner and Walker used their personal money and spare time to develop the Juice Alive brand through a separate company Trident Marketing, Inc.

Of course, U.S. Beverage does not ignore Mr. Walker's contrivance in regard to the name Juice Alive, as Ryan Hamner is discussed in both the factual section and the Juice Alive section of

U.S. Beverage's brief and Mr. Walker himself admits to working for his competing company at the same time he was supposedly working for U.S. Bevergae. [U.S. Beverage brief]. What Defendants are ignoring is that Mr. Hamner stated that Mr. Walker came to him to start a business outside of U.S. Beverage, that Hamner had no knowledge of the juice business then, or now, and that Trident Marketing, of which Ryan Hamner is not a shareholder, registered the trademark. [Hamner Depo. at page 91, line 16 - page 92, line 11; Brief of U.S. Beverage]. After this "factual" introduction, Defendants proceed to make seven arguments, all of which are either inapplicable or not based in fact, as to why Mr. Walker should be allowed to use Juice Alive.

      Defendant's first argument is that Trident Marketing, Inc. is the legally presumed owner of the trademark because it registered the trademark. U.S. Beverage does not dispute that there are plenty of cases that hold that registration creates a presumption of ownership, but, again, this argument overlooks all of the facts of the case, and presumes this situation as some sort of dispute between two abstract companies. Furthermore, one of Plaintiff's claims is that the registration was fraudulent, which would void the registration. See 15 U.S.C. §§ 1119, 1120; Marshak v. Sheppard, 666 F.Supp. 590, 598 (S.D.N.Y.1987) (citations omitted) (court has power to cancel the registration).

      While, of course, all of the cases in regard to a registration creating a presumption of ownership also state that the facts of the situation ultimately control, the response to this contention goes hand-in-hand with the response to Defendants' second and third arguments, which are that U.S. Beverage's fraudulent registration claim is "unsupported by the facts" and that Trident Marketing has established its ownership through priority of use in commerce.

      Mr. Walker's position as an officer and a shareholder with U.S. Beverage at the time of

the registration, and his apparent lack of as a fiduciary character to U.S. Beverage, is discussed in detail in U.S. Beverage's injunction brief, and will not be discussed here again, but U.S. Beverage believes that it is necessary to point out a few additional facts in regard to the registration. First, the Lanham Act defines a "trademark" as follows:

> The term "trademark" includes any word, name, symbol, or device, or any combination thereof--
>
> > (1)   used by a person, or
> > (2)   which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter, to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.

It is undisputed that Trident Marketing, LLC, of which John Walker is the sole shareholder, submitted the registration of the trademark. John Walker, in his deposition, testified that Trident Marketing, at the time, and apparently at the present, does not have any "goods", which on the face of the registration was listed as "juice based concentrates". [Walker Depo. at page 272, lines 16-18; page 335, line 20 - page 336, line 7; page 362, lines 7-11; page 368, lines 9-18][2]. As was known by John Walker at the time of the registration, the only goods/juice based concentrate being sold in commerce was being sold by U.S. Beverage. [Exhibit 2; Walker Depo. at page 226, line 22 - page 227, line 16 (the only thing that Trident Marketing is doing is selling Juice Alive

---

[2] At times, Mr. Walker's partner, Ryan Hamner, seems to disagree with this and state that Trident did want to sell juice, but Mr. Walker was adamant that he would only sell juice through his sole proprietorship John Walker d/b/a Juice Alive. This is where Mr. Walker is caught in a trap, because if he concedes that Trident Marketing wanted to sell juice, then he has started a business that is identical to U.S. Beverage; however, otherwise, Trident Marketing is nothing more than a shell corporation acting "for" U.S. Beverage. In either event, Juice Alive belongs to U.S. Beverage.

through U.S. Beverage; page 136, lines 4 - 22 ("we've come up with a name, a logo, and a market for a product"); page 143, lines 19 -22 ("I don't recall making any sales calls on behalf of Trident Marketing with the exception of U.S. Beverage")]. Thus, Trident Marketing registered a trademark without any goods, essentially registering a trademark for U.S. Beverage's goods. [Id; see also Walker Depo. at page 144, lines 3-5 ("I did not make sales in 2004 through Trident Marketing")].

This, in conjunction with Defendants' contrivance in regard to the "first use" of the trademark Juice Alive, establish a clear fraudulent registration on the part of Trident Marketing. In their argument about first use, Defendants state that "it is a basic tenet that trademark ownership depends on whether a party had 'first use of the mark in commerce.' [Defendants' Brief, page 14]. Defendants then proceed to claim independent use of Juice Alive sometime prior to the registration. [Id at 15]. While Defendants have no factual evidence to support this statement, U.S. Beverage points to the trademark registration, which represents clearly that the first use in commerce of Juice Alive was September 30, 2004, which corresponds directly with the U.S. Beverage flier of September 27, 2004. [Exhibit 1; Exhibit 2]. Since Trident Marketing apparently filed the registration, it would seem that it would have designated this phantom earlier date - if it actually existed.

   The Lanham Act defines use in commerce as:

> The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce--
>
> (1) on goods when--
>
> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the

>goods makes such placement impracticable, then on documents associated with the goods or their sale, and
>
>(B) the goods are sold or transported in commerce, . . . . 15 U.S.C. § 1127.

Clearly, under the Lanham Act, U.S. Beverage is the first use in commerce of Juice Alive, and therefore, U.S. Beverage is entitled to the mark. See Exhibit 2; see also Johnny Blastoff, Inc. v. Los Angeles Rams Football Co., 188 F.3d 427, 433 7th Cir. 1999 ("A party may acquire a protectable right in a trademark only through use of the mark in connection with its product").

The purpose of a trademark is to protect the goodwill of a business and to protect the ability of consumers to distinguish between competing businesses. See Carillon Importers Ltd. v. Frank Pesce Group, Inc., 913 F.Supp. 1559, 1562 (S.D.Fla.1996). Juice Alive was developed "for U.S. Beverage" by U.S. Beverage's Vice President of Sales, who was charged with selling and marketing U.S. Beverage's juice product. It was first used in commerce, and sold to consumers, in connection with U.S. Beverage's juice product. Certainly a registration by Trident Marketing, a company that did not have the product it claimed in the registration, and was not then, or ever, using the product or the name in commerce, is a false and fraudulent registration. 15 U.S.C. § 1120.

"[A]ny person who procures registration of a trade-mark by a false declaration is liable in a civil action in the federal court to any person injured by the trade-mark for any damages sustained in consequence thereof . . . ." Landstrom v. Thorpe, 189 F.2d 46 (8th Cir. 1951). Consequently, John Walker and Trident Marketing are liable to U.S. Beverage's for the damages that it has incurred as a result of the fraudulent registration.

Defendants further assert that "the creation of a Trademark by an employee automatically vests trademark rights to the employer." Of course, U.S. Beverage makes no such broad

-8-

assertion, stating quite clearly that the misappropriation of Juice Alive, a trademark being used in conjunction with U.S. Beverage's goods, by its officer, director and shareholder, is not allowable under the law.  For Defendants to make arguments premised upon John Walker being some sort of abstract employee of U.S. Beverage is palpably wrong, as the evidence squarely contradicts such a supposition.

Furthermore, trademark and trade names used by corporations are the property of the corporation and not the property of an officer or shareholder.  See Malibu, Inc. v. Reasonover, 246 F.Supp.2d 1008, 1015 (N.D.Ind. 2003) ("the trademark and trade names used by a corporation are owned by the corporation and not by its officers, managers or agents." citing to *Rudolf Callman, The Law of Unfair Competition, Trademarks and Monopolies* § 19.01, at 4 (4th ed.1981)); Smith v. Tobacco By-Products and Chemical Corp., 243 F.2d 188, 191 (Cust. and Pat. App. 1957); *McCarthy on Trademarks and Unfair Competition* § 16.36 (2007) ("If a corporation is using a mark, then a principal officer and shareholder is not the 'owner.' citing to multiple cases).  Defendants, in their brief, cite In re New York City Shoes, Inc. 84 B.R. 947 in support of their position; however, that case states quite clearly that, "when a trademark is conceived by an employee of a company, for use by that company, rights to the trademark accrue to the business using it, not to the employee who designed it."  In re New York City Shoes, Inc. 84 B.R. 947, 955 (B.R.E.D. PA. 1988).  Consequently, Defendants' argument has no merit.

Defendants' additional arguments, of U.S. Beverage's "misleading representations", laches and especially the licensing argument are equally without merit and simply overlook all of the facts of the case. U.S. Beverage has asserted ownership of Juice Alive from the very beginning, as it was using it in commerce under its own name. Furthermore, the negotiations regarding U.S. Beverage's continued attempts to try and get John Walker to relinquish his shares clearly evidence U.S. Beverage's claim to ownership of Juice Alive, as does the testimony and other facts of the case. Why would U.S. Beverage even negotiate to allow John Walker to have Juice Alive if it did not contend that it owned Juice Alive? Furthermore, it is worth pointing out that any defendant attempting to establish a laches defense must establish his own good faith, which is a ridiculous proposition for John Walker in this case. See West Indian Sea Island Cotton Ass'n Inc. v. Threadtex, Inc., 761 F.Supp. 1041, 1051 (S.D.N.Y. 1991).

In regard to the licensing agreement, which is so heavily pointed to by Defendants, the facts and the testimony of John Walker and Plaintiffs clearly display that any statement regarding a licensing agreement was done under extreme duress, and that, in fact, no licensing agreement was ever firmly entered into because John Walker kept increasing the price, and because U.S. Beverage intended the distributing agreement to be part of a settlement to buy out John Walker. [Brief of U.S. Beverage]. U.S. Beverage trying to save its business while being extorted by its officer is not evidence of anything, except misconduct on behalf of Mr. Walker. Furthermore, Mr. Walker cannot gain ownership of a trademark by attempting to license a trademark that he does not own.

Defendants state that U.S. Beverage has sent letters falsely claiming ownership of Juice Alive to customers in Mississippi, but this ignores the fact that all Juice Alive sold in

-10-

Mississippi, or anywhere else was sold by U.S. Beverage. [E.g. Walker Depo. at page 158, lines 11-17]. Furthermore, U.S. Beverage has an absolute legitimate claim to the trademark Juice Alive, as is evidenced by the briefs. John Walker is presently out in every state that U.S. Beverage does business in trying to sell Juice Alive to customers and to compete with U.S. Beverage - is that not "false and misleading representations?"

## CONCLUSION

John Walker and Trident Marketing seek a preliminary injunction and seek to defend this case on made up facts, which, in any event do not support their position. They are currently using U.S. Beverage's tradename Juice Alive, its goodwill, proprietary information and otherwise intentionally interfering with U.S. Beverage's business. Under the truthful facts of this case, Juice Alive belongs to U.S. Beverage. Consequently, Defendants Motion for Preliminary Injunction is due to be denied and U.S. Beverage's Motion should be granted in all respects.

Wherefore, U.S. Beverage prays that upon consideration of this brief, its prior brief and a hearing, the Court will deny Defendants Motion and grant the relief requested by U.S. Beverage, and grant such further relief as the Court deems appropriate.

s/C. Nelson Gill
Richard H. Gill (GIL007)
C. Nelson Gill (GIL055)
Copeland, Franco, Screws & Gill, P.A.
444 South Perry Street
P.O. Box 347
Montgomery AL 36101-0347
Phone: 334/834-1180
Fax: 334/834-3172
Email: gill@copelandfranco.com
Email: ngill@copelandfranco.com

*Attorneys for U. S. Beverage, Inc.*

### CERTIFICATE OF SERVICE

    I certify that on this 5th day of April, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys:

- **Raymond Lewis Jackson, Jr**
  rjackson@auburnattorney.com raymond@hidinc.com

                                                s/C. Nelson Gill
                                                Of Counsel