# FREEDOM COURT REPORTING

Page 1

1  IN THE UNITED STATES DISTRICT COURT
2  NORTHERN DISTRICT OF ALABAMA
3  MIDDLE DIVISION
4
5  CASE NUMBER:  CV 2:06-CV-496-MEF
6  U.S. BEVERAGE, INC.,
7       Plaintiff(s),
8       vs.
9  JOHN BUSTER WALKER, II; TRIDENT
10 MARKETING, INC; and A, B, C, and D,
11 fictitious defendants whose names are
12 otherwise unknown but which will be
13 supplemented by amendment,
14      Defendant(s).
15
16      S T I P U L A T I O N
17      IT IS STIPULATED AND AGREED
18 by and between the parties through
19 their respective counsel, that the
20 deposition of JOHN B. WALKER, II may
21 be taken before TAMIE J. STORY,
22 Commissioner, at the offices of Raymond
23 L. Jackson, Jr., 660 North College

*COPY*

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

**FREEDOM COURT REPORTING**

Page 136

1  product may be the same or similar, but
2  it's not the same thing.
3       Q.   How is it not?
4       A.   Because it's a -- we are a
5  marketing company. We're marketing an
6  item, we're creating a brand, and we're
7  doing it through the format -- we're
8  offering to provide services to U.S.
9  Beverage.
10      Q.   So you think that if you
11 called something Juice Alive rather
12 than Cool Tropics, you're doing
13 something different than them?
14           MR. JACKSON:   Object to the
15 form.
16      A.   I think we've created
17 something that was not there before.
18      Q.   In their business; in U.S.
19 Beverage's business?
20      A.   We've created a -- we've
21 marketed -- we've come up with a name,
22 a logo, and a market for a product.
23      Q.   We can sit here for a

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

FREEDOM COURT REPORTING

Page 143

1  form.
2      A.   Sell the name, and we were
3  offering to provide them with services
4  that they could not or would not
5  provide on their own.
6      Q.   Are you pursuing sales at
7  this point?
8      A.   Am I individually pursuing
9  sales?
10     Q.   For U.S. Beverage.
11     A.   Uh-huh (nodding head).  I
12 continued to open up accounts all
13 throughout 2004.
14     Q.   Are you pursuing sales for
15 Trident Marketing?
16     A.   Very little, if any.
17     Q.   What does "very little, if
18 any" mean?
19     A.   I don't recall making any
20 sales calls on behalf of Trident
21 Marketing with the exception of U.S.
22 Beverage.
23     Q.   You don't remember making

367 VALLEY AVENUE
(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

FREEDOM COURT REPORTING

Page 144

1  sales in North Carolina in 2004 for
2  Trident Marketing?
3       A.   Huh-uh (shaking head).  I
4  did not make sales in 2004 through
5  Trident Marketing.
6       Q.   You didn't?
7       A.   No.
8       Q.   When did Trident Marketing
9  create a web site for Juice Alive?
10      A.   Early part of 2004.
11      Q.   Somewhere around when it
12 was incorporated?
13      A.   I think it was actually
14 before it was incorporated.
15      Q.   Did you ever say to U.S.
16 Beverage, hey, I've got a great brand
17 name, Juice Alive, that you should use?
18      A.   We offered to give them
19 access to the brand (nodding head).
20      Q.   You offered to give them
21 access to it?
22      A.   Uh-huh (nodding head).
23      Q.   You didn't just offer to

367 VALLEY AVENUE
(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

**FREEDOM COURT REPORTING**

Page 145

1  give it to them, to U.S. Beverage, did
2  you?
3       A.   Give it to them meaning let
4  them have ownership of it?
5       Q.   Sure.
6       A.   No, I've never offered them
7  ownership of the brand.
8       Q.   You've just always claimed
9  it was your own?
10      A.   It was the property of
11 Trident Marketing.
12      Q.   Uh-huh (nodding head).  And
13 so whoever came up with this, it's
14 being used by your corporation, and
15 you're saying you offered to let U.S.
16 Beverage use it?
17      A.   Yes.  We offered to allow
18 U.S. Beverage to use it and to help
19 them market it.
20      Q.   You realize this would be
21 beneficial for U.S. Beverage?
22      A.   That's one of the reasons
23 why I offered it to them.

**FREEDOM COURT REPORTING**

Page 158

1  them.
2      Q.    But you would put juice in
3  those machines; is that correct --
4      A.    That's correct.
5      Q.    -- which you were gaining a
6  profit from; correct?
7      A.    Correct.
8      Q.    Did you ever share any of
9  those profits with U.S. Beverage?
10     A.    No, I did not.
11     Q.    And you say you were --
12 During this time frame, you say you
13 were marketing Juice Alive for U.S.
14 Beverage --
15     A.    (Witness nodding head).
16     Q.    -- in the geographical
17 region?
18     A.    (Witness nodding head).
19     Q.    I don't understand what --
20 I mean, I understand what that means,
21 but when they delivered juice to
22 somebody that was called Juice Alive,
23 you were being paid for that; is that

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

**FREEDOM COURT REPORTING**

Page 176

1  not own that.
2      Q.   Any others that you can
3  think of?
4      A.   Huh-uh (shaking head).  I
5  think those are the only two to come to
6  my mind.
7      Q.   So you came to them and
8  said we think that -- or I think that
9  you need to keep -- you need to have a
10 brand identity of your own?
11     A.   I felt that was important
12 (nodding head) --
13     Q.   Right.
14     A.   -- yes.
15     Q.   And are you saying that
16 they didn't feel that was important?
17     A.   I don't think they felt
18 that way, no.  I don't think they felt
19 that there was any value in a brand.
20     Q.   They told you they didn't
21 think there was any value in a brand,
22 you're going to testify to that?
23     A.   I can't recall if they

FREEDOM COURT REPORTING

Page 177

1  specifically said that to me or not,
2  but the feeling that I got was that
3  they were not going to invest the time
4  or the money to create one.
5       Q.   Well, that's it; that's
6  what you wanted to do rather than sell
7  products, isn't it?
8            MR. JACKSON:  Object to the
9  form.
10      A.   No.
11      Q.   Is it not true that you
12 told them that you wanted to not
13 travel, spend the whole time thinking
14 up a brand, and not do your job as
15 sales?
16      A.   That's not true, no.
17      Q.   What did you say to them?
18      A.   On what specific time are
19 you referring to?
20      Q.   Well, what time did you say
21 this to them?
22      A.   I made it clear to Grady
23 and Tom that I really didn't like to

**FREEDOM COURT REPORTING**

Page 178

1  travel because I was away from my
2  family, but it didn't impede my ability
3  to do that, and I continued to perform
4  my duties; I continued to travel.
5       Q.   And you never refused to
6  travel?
7       A.   I can't think of a single
8  time that I ever refused to do anything
9  the company asked me to do concerning
10 travel.
11      Q.   When you say the company
12 asked you to do, were you not doing it
13 on your own --
14      A.   Sure, I was.
15      Q.   -- I mean, as part of your
16 job?
17      A.   Yes.
18      Q.   And do you not think that
19 promoting products that U.S. Beverage
20 sells is part of your job?
21      A.   I do believe that's a part
22 of it, yes.
23      Q.   I mean marketing U.S.

FREEDOM COURT REPORTING

Page 179

1  Beverage's products would be a part of
2  your job?
3       A.    Promoting them and selling
4  them and getting the customers, yes,
5  certainly is a part of my job.
6       Q.    And that's not marketing?
7       A.    It depends on how you
8  define marketing, I guess.
9       Q.    Well, how would you define
10 it?
11      A.    To me, marketing is the
12 creation of identity for an entity and
13 the image that you want to project
14 yourself to the outside -- to the
15 public.  That's a part of it, I think.
16      Q.    And you don't think U.S.
17 Beverage would want to do that?  I
18 mean, you don't think that's part of
19 your job at U.S. Beverage?
20      A.    To do what?
21      Q.    Whatever you defined
22 marketing as.
23      A.    I think that there are

367 VALLEY AVENUE
(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

**FREEDOM COURT REPORTING**

Page 180

1  costs that are incurred with what I
2  consider to be marketing, and I think
3  that U.S. Beverage was unwilling to
4  incur those costs.
5       Q.    You think U.S. Beverage is
6  unwilling to incur costs to try to sell
7  its product which is what you were
8  supposed to be doing?
9       A.    Rephrase that.  I don't
10 quite get that question.
11      Q.    Well, I mean, I don't know
12 how you define marketing, but we've
13 just -- I mean, what I'm asking you is
14 that you don't think that -- under your
15 definition of marketing, you don't
16 think U.S. Beverage would want to do
17 that?
18      A.    Now or then?
19      Q.    Any time.
20      A.    I can't speak for them now.
21 I know that when I brought that subject
22 up to them, it never seemed to be very
23 important and there was never a

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

**FREEDOM COURT REPORTING**

Page 226

1  but -- I'm just trying to get clear a
2  small point here, and I don't want to
3  discuss it the afternoon, but, I mean,
4  it's -- however -- I mean, we know how
5  U.S. Beverage acquired it apparently;
6  you say you gave it to them?
7       A.    Gave them what?
8       Q.    The account.
9       A.    I'm referring to one
10 account in Texas that I can think of.
11      Q.    Yeah.
12      A.    Correct.
13      Q.    All I'm saying is that when
14 you were servicing it, however you were
15 doing it, it was the same product that
16 U.S. Beverage would be using after you
17 supposedly gave it to them?
18      A.    It was the Juice Alive
19 brand (nodding head) --
20      Q.    Okay.
21      A.    -- correct.
22      Q.    Right.  Let's go on.  What
23 is Trident Marketing doing in the

**FREEDOM COURT REPORTING**

Page 227

1  beginning of 2005?
2      A.   It is still -- as far as
3  what it's doing, it's -- we had kind of
4  -- Tom and Grady and I had talked about
5  them using the Juice Alive brand, so at
6  that point in time, it was really just
7  -- we were -- Tom and Grady were --
8  U.S. Beverage, I should say, was
9  ordering product through Supreme and
10 requesting that it bear the Juice Alive
11 name, and we were also developing some
12 point of sale material for some of the
13 machines that U.S. Beverage had out in
14 the field.
15     Q.   With Trident Marketing?
16     A.   That's correct.
17     Q.   So who were you working
18 for at this point?
19     A.   Who was I working for?
20     Q.   Yeah.  Who were you working
21 for?
22     A.   At which point in time are
23 you talking about?

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

**FREEDOM COURT REPORTING**

Page 272

1  can you get it directly from Supreme to
2  a customer or through Trident
3  Marketing?
4        A.   Sure.  I can have it
5  shipped just like I did to U.S.
6  Beverage; have it shipped directly to
7  U.S. Beverage's warehouse or any other
8  distributor that I have.
9        Q.   What about to you though;
10 to Trident Marketing?
11       A.   Can I have it shipped to
12 me?
13       Q.   Uh-huh (nodding head).
14       A.   If I wanted to, yes.
15       Q.   Do you do that?
16       A.   No, we don't warehouse --
17 Trident Marketing doesn't warehouse any
18 product at our office in Texas.
19       Q.   Do you have an office in
20 Georgia?
21       A.   We have an office in
22 Calvary, Georgia, yeah -- well, it's
23 not ours, it's North Florida

FREEDOM COURT REPORTING

Page 335

1  we had discussed marketing some other
2  items on-line, but it never
3  materialized.
4      Q.   Right.  So this company,
5  this corporation that you're the sole
6  shareholder of that you said -- you've
7  tried to make some distinction of on a
8  number of occasions as to some
9  difference between U.S. Beverage and
10 yourself and Trident is now in 2006
11 present in the same schools that U.S.
12 Beverage is making a bid to offer the
13 same product to the schools?
14      MR. JACKSON:  Object to the
15 form.
16      A.   Not quite.
17      Q.   Not quite?
18      A.   Not quite, right.
19      Q.   What's wrong with that?
20      A.   The difference is that
21 Trident Marketing is not selling
22 directly to those accounts.  I have set
23 up John Walker doing business as Juice

367 VALLEY AVENUE
(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

FREEDOM COURT REPORTING

Page 336

1  Alive as a sole proprietorship, and
2  that's how that business is being
3  managed through John Walker doing
4  business as Juice Alive.  Trident
5  Marketing, as I mentioned to you, is
6  simply a company that licenses products
7  to other distributors.
8       Q.   So otherwise it's correct
9  though?
10      A.   Outside of what I have just
11 explained to you, it is, yes.
12      Q.   That's fine.  And John
13 Walker doing business as the company
14 that we've already discussed came into
15 existence sometime in 2004?
16      A.   If my memory serves me
17 correct again, I think it was November
18 or December of 2004, but I can't be
19 assured of that.
20      Q.   While you were vice
21 president of sales of U.S. Beverage?
22      A.   That's correct.
23      Q.   Which, of course, you still

367 VALLEY AVENUE
(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

**FREEDOM COURT REPORTING**

Page 362

1   Marketing."
2        A.   Yes, I do disagree with
3   that.
4        Q.   We just had a long
5   discussion on this, and you said you
6   were doing it?
7        A.   It's through John Walker
8   doing business as Juice Alive.  Trident
9   Marketing, again, is a company that
10  sets up licensing agreements for other
11  distributors.
12       Q.   So you're doing it through
13  your other company?
14       A.   Correct, through John
15  Walker doing business as Juice Alive.
16       Q.   And you view that as some
17  distinction?
18       A.   I just think it's important
19  to clarify the facts.
20       Q.   And you're just trying to
21  get the corporate assets out of it?
22       A.   The corporate assets out of
23  what?

**FREEDOM COURT REPORTING**

Page 368

1  parts of it; of the letter.
2          MR. JACKSON:  I think he's
3  asking you to go through and read it,
4  and as you read it, John, tell him what
5  parts are true and what aren't.  If
6  you've got to go sentence by sentence,
7  you know --
8          THE WITNESS:  Okay.
9     A.   "It has been brought to our
10 attention that John Walker is engaging
11 to market and distribute the Juice
12 Alive brand in Mississippi through his
13 corporation, Trident Marketing" -- I
14 won't read it all out loud, okay, I'll
15 just read it to myself.
16         Okay.  I disagree with the
17 first statement, it's not through my
18 corporation, it's --
19    Q.   Well, we've been through --
20 let's say it's fair enough that you and
21 I went through up and to the health
22 insurance, did we not?
23    A.   Where is the health