## THIRD WITNESS STATEMENT OF JOHN B. WALKER, II

My name is John B. Walker, II, and I reside in Katy, Texas. I am over the age of nineteen years old, and I am legally competent to testify. I have personal knowledge of the following facts:

In October or November of 2004, my brother Patrick Walker and I start selling Juice Alive in North Carolina. In 2004, my brother Patrick was a student at the University of North Carolina in Chapel Hill. He told me that he wanted an opportunity to make some money working on a part time basis while he finished his studies. As I will explain more fully below, I was also in need of making additional money at this time to help support my wife and children.

At the time that I started selling Juice Alive in North Carolina, Tom Clark, Grady Kittrell and I had not discussed any business opportunities in North Carolina. U.S. Beverage was not interested in doing business in North Carolina until sometime in 2006. I did not consider North Carolina to be part of the sales territory or potential sales territory of U.S. Beverage.

My decision to start generating extra income for myself was influenced due to the events that had occurred in US Beverage over the previous 12 months. In October of 2003, Tom and Grady changed my income structure without my consent, which was not what we had agreed during the merger process. Prior to this, we were all receiving an $800 per week salary and a $700 per week owner draw. At this time, my owner draw was completely eliminated and my salary was increased to $1,200 per week, resulting in a total loss of compensation of over $300 per week (or $15,600 per year). Tom and Grady placed me on new compensation program, which included an 8% commission on product sales to accounts that I opened along with a commission on equipment sales that I made. At this time, Tom and Grady also eliminated their owner draws; however, Tom and Grady also increased each of their salaries to roughly $2,000 per week. After this compensation change, I was making $40,000.00 less per year than Tom or Grady.

Over the next 12 months, I opened over 300 new accounts for US Beverage, and I also maintained the existing customer base from my former company Tropical Perfections. During this period, I had also accumulated over $15,700.00 in un-reimbursed expenses as of November of 2004. My sales commissions also went unpaid. I did not receive my first commission check until August 23, 2004—a full ten months after being placed on commission. My first commission check was for only $250.00 when the balance on my commissions was $15,445 at August of 2004. As of November of 2004, the balance of my unpaid

commissions totaled over $20,000.00. I was making principal and interest payments on my personal credit card that held the unpaid expenses, which should have been paid by U.S. Beverage.

During this time frame from October 2003 to November 2004, Grady Kittrell and his father had created a real estate company, in which they were actively buying, renting and selling homes. Grady used the employees of U.S. Beverage to perform tasks for his real estate company, held regular meetings with tenants and contractors in U.S. Beverage's building, and used U.S. Beverage gas and cell phones to conduct business for his real estate company. Furthermore, I felt that Tom and Grady were acting selfishly and that they were making poor financial decisions. I felt that the company was inevitably heading for financial problems, which did occur in July of 2005.

To summarize at the time that Patrick and I started working together, I had been frozen out of the business to the extent that my expenses—as a purported owner of the company— were not being reimbursed, and my sales commissions were not being paid. Grady was using company employees and property to further his personal business. With my opinions and financial needs ignored, I was an owner and officer of U.S. Beverage in name only beginning in October of 2003.

My company Trident Marketing, Inc. charges between $6 and $10 per case to juice customers and other sub-distributors for the licensing of the Juice Alive brand name. From my experience of over ten years in the business of selling fruit juice and/or slushy drinks, it is customary for companies licensing the use of a brand name to charge at least $6 per case for the use of the brand name.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Dated: April 2, 2007

John B. Walker, II