IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| U.S. BEVERAGE, INC. | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 2:06-CV-496-SRW |
| | ) |
| JOHN BUSTER WALKER, II; and | ) |
| TRIDENT MARKETING, INC.; | ) |
| | ) |
|     Defendants. | ) |
| ------------------------------------------------ | ) |
| JOHN BUSTER WALKER, II; and | ) |
| TRIDENT MARKETING, INC.; | ) |
| | ) |
|     Counterclaim Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| U.S. BEVERAGE, INC.; | ) |
| | ) |
|     Counterclaim Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| GRADY DOWLING KITTRELL; and | ) |
| THOMAS GOING CLARK, III; | ) |
| | ) |
|     Third Party Defendants. | ) |

### DEFENDANT'S RESPONSE AND OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE WITNESS STATEMENT OF NORMAN TODD

    Come now, Defendants John Walker and Trident Marketing, Inc. and do hereby respond to and oppose Plaintiff U.S. Beverage, Inc.'s 'Motion to Strike Witness Statement of Norman Todd':

    Plaintiff U.S. Beverage seeks to strike the sworn witness statement of Norman Todd, a former employee of U.S. Beverage. Plaintiff's primary argument to strike the

witness statement seems to be that Norman Todd allegedly makes contradictory statements in his recent witness statement (which is given under penalty of perjury pursuant to 28 U.S.C. § 1746) when compared to his deposition testimony. Plaintiff even goes as far as to strongly hint that the undersigned counsel for Defendants is guilty of suborning perjury.

Defendants' counsel would first like to specifically address Plaintiff's not-so-subtle claims that Mr. Todd's statement was concocted or "fabricated" by counsel. Such an accusation is categorically false. In drafting Todd's Witness statement, Counsel did not alter *in any way* the substance of Todd's testimony (aside from making one typo discussed more fully in footnote 1 below). Much like their recently filed Reply Brief, Plaintiff offers no precedent or statute to support its claims that Mr. Todd's witness statement should be stricken from the record, settling instead for broad, emotional claims of fraud and deceit. Thereby, Plaintiff again leaves it to Defendants' counsel to delineate the law on the matter and fully discuss the underlying facts. As shown below, this Court should resist Plaintiff's attempt to suppress the facts in this case.

Before Defendants begin their legal rebuttal of Plaintiff's Motion, they would simply point out that, if Mr. Todd is concocting facts out of thin air as Plaintiff accuses him of doing, then Plaintiff's counsel will have the opportunity to expose him during a cross-examination at the preliminary injunction hearing. Even if Plaintiff is successful at striking Mr. Todd's witness statements at this stage, Mr. Todd will testify to the same facts at the hearing. Plaintiff is going to have to confront Mr. Todd's testimony head-on at some point. This tactic of seeking to strike this testimony only delays the inevitable. At

the hearing, the Court will be able to determine the weight and credibility of Mr. Todd's testimony through direct examination and cross examination.

**LEGAL ARGUMENT**

Plaintiff makes two arguments to strike Todd's witness statement. First, Plaintiff implies in this motion and their Reply Brief that the use of witness statements is somehow improper. Citing 28 U.S.C. § 1746 and case law, Defendants rebut this argument. Secondly, Plaintiff U.S. Beverage argues that Todd's statement is "sham" testimony, which must be disregarded by this Court. Defendants will show that Todd's statement is neither factually nor legally "sham" testimony.

I. **The Use of Witness Statements given under Penalty of Perjury in Support of a Motion for Preliminary Injunction is Not Only Acceptable but Required.**

Plaintiff U.S. Beverage's first argument ignores 28 U.S.C. § 1746. That code section reads in pertinent part:

> Whenever, under any law of the United States or under any rule ... or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by a sworn declaration ... or affidavit, in writing of the person making the same ... such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration ... or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated....

Mr. Todd's witness statement was taken under penalty of perjury, subscribed and dated in a manner conforming "substantially to the ... form" set forth in this code section. Id. Pursuant to this section, Todd's witness statement shall have "like force and effect" of a "sworn declaration" or "affidavit." Id. Furthermore, the same penalties for perjury apply to persons giving a false witness statement under 28 U.S.C. § 1746 in a federal court proceeding, as would apply to a person testifying falsely in an affidavit or

deposition testimony to be used in a federal court case. In other words, witness statements given under penalty of perjury must be given equivalent weight as affidavits in federal court pursuant to 28 U.S.C. § 1746.

For practical reasons, a party is free to use affidavits or witness statements in support of a motion for preliminary injunction. *See, e.g., Wounded Knee Legal Defense/Offense Committee v. Federal Bureau of Investigation*, 507 F.2d 1281, 1286-1287 (8th Cir. 1974) ("By its nature, an application for a preliminary injunction often requires an expeditious hearing and decision. In order to overcome the problems that would be created in attempting to gather the necessary witnesses, it has often been held that affidavits may be received at a hearing on a motion for a preliminary injunction."); *see also, Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997) ("Affidavits are ordinarily inadmissible at trials but they are fully admissible in summary proceedings, including preliminary-injunction proceedings.") Indeed, "nothing can be considered in support of plaintiff's motion for a preliminary injunction except facts supported by affidavit." *Societe Comptoir De L'Industrie Cotonniere, Etablissements Boussac v. Alexander's Dept. Stores, Inc.,* 190 F.Supp. 594, 595 (S.D.N.Y. 1961) Therefore, the rules not only *allow* Defendants to use sworn statements in support of its case, they *require it.* Todd's testimony is highly relevant to the case at hand and specifically as to the likelihood of the respective parties to succeed on the merits of the case.

## II. Norman Todd's Sworn Statement is Not Sham Testimony.

The Eleventh Circuit has clearly defined when a Court may disregard affidavit testimony as a "sham" in summary proceedings.

> Under the law of this Circuit, we may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when the affidavit is *directly contradicted* by deposition testimony.

*McCormick v. City of Fort Lauderdale, et al.*, 333 F.3d 1234, 1240, (11th Cir. 2003) (citing *Van T. Junkins and Assoc., Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)) (emphasis added). The testimony of Norman Todd does not contradict anything in his deposition testimony, but it rather explains his earlier deposition testimony.

None of the statements cited by Plaintiff contradict his testimony in his sworn statement. Plaintiff U.S. Beverage first cites Todd's description of the Alabama Trade Show conversation. (Plaintiffs' Motion to Strike, p. 2) The exact deposition testimony that it cites as contradictory to Todd's witness statement given under penalty of perjury is as follows:

> Todd: I was told by [Walker] while I was standing with Mr. Clark that we were not privy to the POS material until we agreed to pay more for the product, that he was holding back on that.
> Counsel: And when was that statement made?
> Todd: The evening of the Alabama Trade Show. (Todd depo, p. 25, ln 20-p.26, ln 3)

> Todd: Well, it started, like I said, at the dinner table between—the conversation between John Walker and Tom Clark, when John Walker expressed to Tom that he had to pay outside companies that were willing to pay him more for the product than what US Beverage had agreed to pay him for the product, and if US Beverage didn't compromise or come to some kind of medium on a higher paying price per label for the boxes, that

> he was going to have to go with these other companies so that he could make more money. (Todd depo, p. 30, ln 18-p. 31, ln 6)
>
> Counsel: What did you say about the Juice Alive Brand in your letter there [to the Mississippi Nutrition Directors]? [...]
> Todd: (As read) Juice Alive brand was developed for sales and distribution solely by US Beverage, Inc.
> Counsel: Okay and what was your basis for stating that?
> Todd: That was what I was told.
> Counsel: Do you have any other independent knowledge or any other – anything else to base that statement on other than what you were told?
> Todd: No, sir.
> Counsel: And who were you told that by?
> Todd: I was told that by Tom Clark. (Todd depo, p. 57, ln 9-ln 23)

The first two statements cited by Plaintiff are merely general descriptions of the events at the Alabama Trade Show. Nothing in these statements contradict anything in Todd's sworn statement. Indeed, Todd's witness statement describes, in further detail, the conversation that Todd generally described in the second deposition statement cited by Plaintiffs. (See Todd Witness Statement, pp. 1-2—attached as Exhibit B to Defendants' Reply Brief (document 30)). Neither the deposition page citations of Plaintiff nor anything else in Todd's deposition contradicts Todd's more detailed description of the important events involving the 2006 Alabama Trade Show as contained in Todd's witness statement to this Court.

Plaintiff further claims that Mr. Todd "testified in his deposition that it had always been his understanding that Juice Alive was owned by US Beverage and that his basis for saying that was from Tom Clark." (Plaintiffs' Motion to Strike, p. 2) This is completely untrue. As shown above, the quote that they refer to states nothing of the sort. Mr. Todd is saying that he was told by Tom Clark to write the letter to the Nutrition Directors in Mississippi. In the deposition quote cited by Plaintiff, Todd is not stating anything about his own personal beliefs or understandings; he is rather merely reading from his letter to

the Mississippi child nutrition directors. As shown above, Todd clearly testifies in his deposition that the information and claims made in that letter were based on statements told to him by his former boss Tom Clark. In addition, Todd testifies in his deposition that, "I don't specifically think that I've ever told anybody that U.S. Beverage owns Juice Alive because I don't know." (Todd Depo, pg. 56, ln 3-ln 5) Clearly, Todd expressed no personal beliefs about the true ownership of Juice Alive during his deposition. It is not contradictory for him to later say that he believes Juice Alive is the property of John Walker. Therefore, the cited statement from Todd's deposition does not contradict (much less "directly contradict") his statement in his witness statement that he personally believed that Juice Alive is owned by John Walker.

Plaintiff also claims that Todd's sworn testimony contradicts his deposition testimony where he stated that he did not remember any specific conversations about Walker while working for US Beverage. (Plaintiffs' Motion to Strike, p. 2) Firstly, Todd did not say that no statements regarding John Walker had ever *occurred* while he was employed; he said that he did not *recall* any specific conversations. (Todd Depo., p. 17, ln. 2-ln 4) Not remembering the conversations at one time and remembering them later is *not* contradiction. Secondly, Plaintiffs' cited deposition testimony shows that Todd remembered conversations about John Walker. As stated above, Todd testified at deposition that Tom Clark gave him the information that was the basis for his letter to the Mississippi Nutrition Directors. Obviously, this required some sort of conversation about John Walker at some point. So this statement by Todd early in his deposition that he did not remember any specific conversations about Walker should clearly be taken with a grain of salt.

Plaintiff makes the same mistake about Todd's testimony regarding when U.S. Beverage stopped selling Juice Alive and began selling Fruzars. In his witness statement, Todd specifically states that U.S. Beverage did not stop selling Juice Alive until it ran out of their stock. (Todd witness statement, p. 2) Plaintiff argues that this statement somehow contradicts his deposition testimony where Todd states that he "didn't know of a specific date" when U.S. Beverage stopped selling Juice Alive. Again, this portion of Todd's witness statement is not a contradiction of his prior deposition testimony; it is merely a clarification of that deposition testimony.[1]

Plaintiff then makes the general argument that, since Todd previously allegedly testified that he believed Walker was guilty of bid rigging, he cannot now give testimony that is "in support" of Walker. (Plaintiffs' Motion to Strike, p. 4) This argument does not approach the legal standard for a court to strike sham testimony. As stated above, Plaintiff U.S. Beverage must show that Todd's witness statement testimony "directly contradicts" his deposition testimony, in order for this Court to strike the witness statement. *McCormick*, 333 F.3d 1234, 1240 (11th Cir. 2003). Simply because Todd was a witness for the Plaintiff (when employed by Plaintiff) and is now a witness for Defendants (after Todd approached Defendants and asked Defendant Trident Marketing for a job) is not sufficient to disqualify Todd's witness statement testimony.

Plaintiff U.S. Beverage, Inc. has failed to cite a single instance in which Todd's witness statement "directly contradicts" his previous deposition testimony. At most, Plaintiff has attempted to raise doubts or questions regarding the credibility and weight of Todd's witness statement. The Eleventh Circuit has cautioned in *McCormick* that

---

[1] Plaintiff also points out that Todd testifies that US Beverage continued to sell Juice Alive until "August 2007", stating that, because it is not yet August 2007, Todd or counsel for the Defendant has fabricated these facts. The date of August 2007 is a typo. It should read August 2006.

"[i]ssues of credibility and the weight to be afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment." Id. As stated earlier, Todd is available to testify at the preliminary injunction hearing, and he will testify to the facts contained in his witness statement. Plaintiff's arguments are aimed at the credibility of Todd. Such determinations are for the fact-finder to weigh, but should not be made on the basis of a motion to strike in a summary procedure like this one.

## CONCLUSION

It is completely proper for Defendants to use witness statements given under penalty of perjury to support its position in summary proceedings. If Plaintiff wishes this Court to strike sworn testimony, it must first prove that it directly contradicts previous testimony of the witness. Plaintiff has not shown any instance of a direct contradiction. Plaintiff confuses a clarification (and further exposition) by witness Norman Todd of his earlier deposition testimony with a direct contradiction. Therefore, Defendants respectfully request that this Court deny Plaintiff's 'Motion to Strike Witness Statement of Norman Todd.'

**RESPECTFULLY SUBMITTED** this the __18th__ day of APRIL 2007.

_____
Raymond L. Jackson, Jr. (JAC054)
Attorney for Defendants John B. Walker, II
and Trident Marketing, Inc.

**OF COUNSEL:**
Raymond L. Jackson, Jr.
Jackson Law Group, P.C.
P.O. Box 3575
Auburn, Alabama 36831-3575
(334) 821-0600
(334) 821-1950 (FAX)
rjackson@auburnattorney.com

## CERTIFICATE OF SERVICE

I certify that on this the 18th day of APRIL 2007 a copy of the foregoing pleading was served upon all counsel of record through the EMCS electronic filing system and/or by placing said copy in First Class U.S. Mail with postage prepaid to the following addresses:

Richard H. Gill, Esq.
C. Nelson Gill, Esq.
Copeland, Franco, Screws & Gill, P.A.
P.O. Box 347
Montgomery, AL 36101-0347

_____
OF COUNSEL