**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

U.S. BEVERAGE, INC., )
)
Plaintiff, )
)
v. ) Civil Action No. 2:06-cv-496-MEF
)
JOHN BUSTER WALKER, II; TRIDENT )
MARKETING, INC.; et al. )
)
Defendants. )

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR ENFORCEMENT OF MEDIATED SETTLEMENT AGREEMENT**

Comes now U.S. Beverage, Inc. and hereby submits its Memorandum in Support of Motion for Enforcement of Mediated Settlement Agreement, and shows as follows:

At the outset, a District Court clearly has the authority to enforce a mediated settlement agreement, and to interpret it, if necessary. Southtrust Bank v. Collins Holding Corp., 139 Fed.Appx. 133 (11th Cir. (Ala.) 2005); Spurlock v. Pioneer Financial Services, Inc., 808 F.Supp. 782 (M.D.Ala.1992); Thompson v. D.C. America, Inc., 951 F.Supp. 192 (M.D.Ala.1996). Under Alabama law, an agreement reached during litigation is "as binding on the parties as any other contract into which they may enter, and will not be set aside except for fraud, collusion, accident, surprise or some ground of this nature." Brocato v. Brocato, 332 So.2d 722, 724 (Ala. 1976). In fact, there does not appear to be any dispute between the parties as to whether a binding settlement was reached; however, Defendants' John Walker and Trident Marketing, Inc. have now refused to sign the necessary documents to give effect to the settlement agreement because of their contention as to the meaning of the word "non-compete", which contention is facially and factually untenable.

After a long and protracted mediation, the parties, with the help of the mediator, William

Coleman, entered into a binding settlement agreement, which is attached hereto as Exhibit 1. All parties, not just the attorneys, signed the settlement agreement. In the signed settlement agreement, it is provided:

> 8. John Walker agrees to enter into a non-compete agreement with U.S. Beverage not to compete with U.S. Beverage within the state of Alabama, or within Mississippi within 200 miles from the offices of U.S. Beverage in Montgomery, or in Tennessee in any county west of I65 or in any part of any county east of I65 through which I65 passes. The non-compete obligations shall cease with respect to the Mississippi portion on May 24, 2008, with respect to the west Tennessee portion on August 1, 2008, and with respect to Alabama on May 24, 2009.

There is no dispute as to the scope of the agreement, i.e. the locations, as those were negotiated for approximately 6 hours and were essentially dictated by Defendant Walker. However, the "dispute" (which is not a dispute, but an attempt by John Walker to breach or evade his agreement), arises from John Walker's post-mediation contention that "non-compete" means only that he, and his direct employees, personally will not compete with U.S. Beverage in the agreed upon areas, but that he can license the product bearing the tradename "Juice Alive", to third parties for those parties to compete in the agreed upon areas. "Juice Alive" was the tradename used by U.S. Beverage, and was one of the central areas on which the litigation centered.

This issue arose when counsel for U.S. Beverage drafted the documents required to carry out the mediation settlement agreement and forwarded those documents to Walker's counsel for his approval and execution. The documents were drawn up so as to match the settlement agreement completely. In the initial draft, undersigned counsel included the relevant non-compete language as follows:

> 1. Walker shall not, for himself or on behalf of any other group, partnership, or corporation, call on any customer of U.S. Beverage for the purpose of soliciting, diverting, or taking away any customer from U.S. Beverage with regard to any products being presently sold, or sold during the term of this agreement by U.S.

> Beverage, or compete with U.S. Beverage, directly or indirectly, for the time specified, in each and all of the following areas:
>
> a) Alabama: the entire State, until May 24, 2009;
> b) Mississippi: limited to those areas in Mississippi which are within two hundred (200) miles of U.S. Beverage's office in Montgomery, Alabama, 844 Lagoon Commercial Blvd, Montgomery, AL 36117, until May 24, 2008;
> c) Tennessee: within all counties which are West of U.S. Interstate 65, and furthermore, within all counties East of Interstate 65 if Interstate 65 runs through the county, or touches any part of such county, until August 1, 2008.

However, it immediately became clear that John Walker wanted to change the settlement agreement as Walker delivered the correspondence attached as Exhibit 2, which, in addition to seeking to add multiple provisions to the indemnity agreement, none of which were in the settlement agreement, also sought to change the non-compete and take out the "or indirectly" phrase. In response to this, undersigned counsel responded (Exhibit 3) that U.S. Beverage would not re-negotiate and add terms that were not agreed upon, but would re-draft the non-compete to make "indirectly" more specific, and drafted the relevant provision as follows:

> or compete with U.S. Beverage, or directly license his product for use by third-party competitors, for the time specified, in each and all of the following areas: . . .
>
> 2. John Walker shall notify all potential licensees who may be competing in the area specified by this agreement of the existence of the non-compete agreement.

This response was met with a retraction of the previous requests regarding the indemnity agreement, but a refusal to agree to the non-compete on the ground that John Walker had already entered into licensing agreements with third parties for those third parties to compete and to sell the brand, Juice Alive, the very brand that the current lawsuit was about, in the affected areas, and that it would be unfair for John Walker to have to agree to the non-compete, or otherwise it was not John Walker's intention to enter into such an agreement. See Exhibit 4. In this final correspondence, Walker essentially issued U.S. Beverage an ultimatum, stating that if U.S. Beverage "pushes" the issue, it

will be out of luck in any event because competitors will use a different brand to compete in the covered areas. Id. While it is certainly true that U.S. Beverage will still have competitors, that is not the issue, and not a basis for Walker to be able to evade the non-compete agreement. See Exhibit 5.

Essentially, the contention by John Walker is that the parties negotiated a non-compete agreement that accomplishes nothing; it is a non-compete agreement that allows John Walker to engage in competition indirectly, through "licensees" or other fronts, in the areas that he is directly prohibited. As recognized by the Alabama Supreme Court:

> That which is forbidden directly cannot be done indirectly, and the law abhors evasions and subterfuges. City of Birmingham v. State ex rel. Carmichael, 233 Ala. 138, 170 So. 64 (Ala. 1936).

And that is exactly what this is, an evasion and a subterfuge.

As the Court is aware, this case involved various issues, one of which was the right to the trademark, "Juice Alive", to which both parties claimed ownership. This matter was extensively briefed in preparation for the preliminary injunction; however, the mediation was held in lieu of the injunction hearing and in an attempt to resolve this matter. One of the matters agreed upon in the mediation, and the primary consideration for the non-compete, was the agreement by U.S. Beverage to relinquish all claims in regard to Juice Alive, and to give the trademark to John Walker. This is memorialized in paragraph 7 of the settlement agreement. See Exhibit 1. The reason for the limited non-compete was for U.S. Beverage, after giving up Juice Alive, to not have to compete against itself, i.e. its brand Juice Alive, for the time periods and locations agreed to. Under the current position of John Walker, U.S. Beverage will have to compete with Juice Alive everywhere. John Walker will just have a third party do the competing in the areas covered by the non-compete, so

that he can still make a profit in those areas at U.S. Beverage's expense.

Even more striking is the fact that another issue in the lawsuit was the existence of a prior non-compete agreement (entered into by the parties in 2002), of which Walker was in an ongoing violation by: licensing his product to third parties, even though he was employed by U.S. Beverage. In the briefs to this Court, and in discussions between counsel, Walker contended that the prior non-compete agreement had been poorly drafted because it stated only that Walker "shall not work in a competing business", and thus, Walker could legally circumvent the non-compete by licensing the brand to others. This restrictive interpretation of the non-compete was one of the central issues in the dispute and in the mediation. Of course, U.S. Beverage contended that Walker's argument was incorrect, but, the point is, that Walker, now, in the present argument, is making the argument that after the prior litigation, and the representations by his counsel, U.S. Beverage and he have simply re-entered into the same agreement which can easily be circumvented by him in exactly the same way. This is facially a scam, as no one, including counsel or the mediator, could possibly conceive that this was any party's intention.

Walker, as part of the mediation, and in order to obtain the tradename for future business (as well as to avoid liability for prior violations of the existing non-compete, which included a liquidated damages provision) agreed to enter into a fully binding non-compete in the geographical areas specified, which would not be subject to the asserted infirmities of the former provision. Now, Mr. Walker is contending that the mediated settlement allows him to do precisely what he was already doing and for which he had been sued. He seeks to pocket the concessions by U.S. Beverage and give up nothing that he agreed to.

The word "non-compete" is completely unambiguous. It means for John Walker to: "not

compete." "Where the terms of a written settlement agreement are clear and unambiguous, the terms of that agreement may not be varied by the introduction of parol evidence regarding a mutual mistake of fact." Cain v. Saunders, 813 So.2d 891 (Ala.Civ.App. 2001); see also Paul Revere Life Ins. Co. v. Kick, 2001 WL 1049224 (S.D.Ala. May 31, 2001). "[A]n agreement is not rendered ambiguous simply because the parties assign different meanings to it." Id. However, even if the Court were to view "non-compete" as ambiguous, the result would be the same. It is clear that the only reasonable interpretation, in looking at the settlement agreement as a whole, is that the parties intended for John Walker, and "Juice Alive", to not be in competition with U.S. Beverage, for the areas and times in the agreement, in any manner. The argument presented by John Walker is not a legitimate one, and, in light of the facts, is facially wrong and is made in bad faith. While Walker's contentions evidence an intention of fraud and deception, a ground which could entitle U.S. Beverage to seek relief from the settlement agreement, U.S. Beverage only asks this Court to enforce the settlement agreement as written, so that the matter will be resolved and both parties can go their separate ways.

In addition to the enforcement of the settlement agreement, U.S. Beverage is entitled to damages as a result of this intentional delay. "Juice Alive" has already been bid against U.S. Beverage in one of the areas of the non-compete (West Tennessee), and U.S. Beverage has thus lost the benefit of the agreement for at least the time that has been spent since the mediation. John Walker still holds his shares of U.S. Beverage, and his other interest as set forth in the settlement agreement, and therefore, U.S. Beverage was been extensively damaged as a result of this delay. For this reason, U.S. Beverage seeks sanctions against Walker for the costs associated with the filing of the present Motion to Compel, as well as the costs of the mediation, and such other relief as the

Court deems appropriate.

Wherefore, U.S. Beverage prays that the Court will enforce the settlement agreement as written, and award costs as described herein, and grant such further relief as the Court deems appropriate.

s/C. Nelson Gill
Richard H. Gill (GIL007)
C. Nelson Gill (GIL055)
Copeland, Franco, Screws & Gill, P.A.
444 South Perry Street
P.O. Box 347
Montgomery AL 36101-0347
Phone: 334/834-1180
Fax: 334/834-3172
Email: gill@copelandfranco.com
Email: ngill@copelandfranco.com

***Attorneys for U. S. Beverage, Inc.***

**CERTIFICATE OF SERVICE**

I certify that on this 13th day of July, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys:

- **Raymond Lewis Jackson, Jr**
  rjackson@auburnattorney.com raymond@hidinc.com

s/C. Nelson Gill
Of Counsel