Mediation Settlement Agreement

This Agreement entered into this the 24th day of May 2007 by the undersigned parties. It is agreed:

1. John Walker will surrender his shares in U.S. Beverage, Inc and will resign as an officer of the corporation.

2. John Walker will assign his interest in GBD, LLC to the LLC in order to relinquish any interest in the LLC or the building it owns.

3. Grady Kittrell and Thomas Clark agree to use reasonable efforts to have John Walker released as a guarantor of the SBA loan to U.S. Beverage and to refinance its indebtedness to SBA. John Walker agrees to provide all reasonable cooperation as may be necessary in connection with the release or the refinancing.

4. Grady Kittrell and Thomas Clark agree to indemnity and hold harmless John Walker from any debts of U.S. Beverage and of GBD, LLC, including without limitation credit card debt of Tropical Perfections, Inc.

5. John Walker agrees not to use proprietary information obtained from or concerning U.S. Beverage, and he agrees to delete from his computer all information in Quick Books pertaining to U.S. Beverage.

6. John Walker agrees not to hold himself out as having any ownership of or relationship with U.S. Beverage.

7. U. S. Beverage, Grady Kittrell and Thomas Clark agree to quit claim and assign to Trident Marketing, Inc., a Georgia Corporation, any and all interest they may have to the trademark "juice alive", Reg. No. 3,027,833, Registered December 13, 2005.

8. John Walker agrees to enter into a non-compete agreement with U.S. Beverage not to compete with U.S. Beverage within the state of Alabama, or within Mississippi within 200 miles from the offices of U.S. Beverage in Montgomery, or in Tennessee in any county west of I65 or in any part of any county east of I65 through which I65 passes. The non-compete obligations shall cease with respect to the Mississippi portion on May 24, 2008, with respect to the west Tennessee portion on August 1, 2008, and with respect to Alabama on May 24, 2009.

9. In the event of any future litigation between or among the parties, the parties select the forum to be the U.S.D.C. for the Middle District of Alabama, Northern Division, and if subject matter does not exist, then the Circuit Court of Montgomery County, Alabama.

**EXHIBIT 1**

10. Each party hereto agrees to enter into a standard non-disparagement agreement not to disparage any other party hereto for any matter heretofore occurring.

11. The parties agree to dismiss the lawsuit (CV 2:06-cv-496 MEF) with prejudice, each party to pay its or his own cost, and to execute mutual releases.

12. The parties will execute all documents to consummate the agreement within 30 days from this date.

13. It is agreed this is a binding agreement.

Dated: May 24, 2007.

_____
John Buster Walker

_____
Grady Kittrell

_____
Thomas Clark

U. S. Beverage, Inc.

By: _____
Its President

Trident Marketing, Inc.

By: _____
Its President



# Jackson Law Group, P.C.

Raymond L. Jackson, Jr. (AL & GA)
Scott R. Crouse
Brian D. Mann, of Counsel

660 N. College St., Suite D
P.O. Box 3575
Auburn, AL 36831-3575
tel. 334.821.0600
fax. 334.821.1950

2505 Crawford Rd.
Phenix City, AL 36867
tel. 334.664.0336
fax. 334.664.0340

June 20, 2007

C. Nelson Gill, Esq.  **VIA FAX & E-MAIL ONLY**
Copeland, Franco, Screws & Gill, P.A.
P.O. Box 347
Montgomery, AL 36101-0347

Re:   U.S. Beverage, Inc. & GBD Holding, LLC

Dear Nelson:

Since receiving the attachments to the settlement agreement yesterday, I have had a chance to review all of the settlement documents and discuss those with my client. Because I have number of suggested changes and issues for discussion, I thought that it would be better to send you my initial comments in writing.

As to the settlement agreement and several of the exhibits, my client's company is incorrectly referred to as "Trident Marketing, LLC." My client's company is Trident Marketing, Inc. As to the settlement agreement, my client is concerned about the confidentiality provision. For example, if he is contacted by a person who wants to buy his product within the non-competition area, my client would like to be able to tell such person that he cannot sell to them due to the existence of a non-competition agreement, rather than refuse to do business with them without giving any explanation. If we could clarify the confidentiality to allow my client to tell third parties about the existence of the non-competition agreement, my client and I can agree with the confidentiality provision.

EXHIBIT A – IRREVOCABLE STOCK POWER – I suggest that we remove the language at the end of the paragraph "With full power of substitution on the premises."

EXHIBIT B – No changes.

EXHIBIT C – INDEMNITY AGREEMENT – I suggest that we change the last two lines of the first paragraph to read "personal guarantor or for which John Walker may be alleged by a third party to be a responsible party as a result of Walker's prior affiliation with U.S. Beverage."

As to the second full paragraph of Exhibit C, I believe that we need some additional language. It is my understanding that the Tropical Perfections credit card account has been permanently closed. I think that the agreement should require USB to make timely monthly payments on the credit card of at least the minimum required payment until such time as it is

paid in full. Lastly, I would like for your client to agree to pay off the credit card in full within six months. I believe that the agreement is too vague without a time limit for paying off the credit card.

I also think that the indemnity agreement should include a reference to USB's agreement to refinance its SBA loan and/or any other loan or financial obligation that is guaranteed by John Walker so that John Walker is no longer a personal guarantor of its financial obligations. I also think that there should be a time limit of one year for USB to refinance its debt.

Lastly, if USB fails to pay off of the Tropical Perfections credit card within 6 months and/or fails to refinance its SBA loan within one year, the agreement should state that my client is released from the non-competition agreement. In other words, the agreement contains penalties for my client if he breaches his promises, but as currently drafted the agreement does not contain any real penalties for your clients if they do not keep their promises.

EXHIBIT D – Quitclaim of Interest in "Juice Alive"— Other than changing the agreement to state "Trident Marketing, Inc.," I do not have any changes.

EXHIBIT E – Non-Competition Agreement— Under numbered paragraph 1, it states that "Walker shall not ... compete with U.S. Beverage, directly or indirectly...." I believe that this provision is vague. My concern is that your clients would consider actions taken by Dispensing Systems, Inc. or other companies that may license the use of the Juice Alive® name as "indirect competition." My client cannot agree to be responsible for the actions of companies of which he is not an owner, shareholder, or employee.

In numbered paragraph 2, I agree that my client should be subject to an injunction if the agreement is breached. However, I believe that the agreement should provide that USB should provide my client 30 days written notice of any alleged breach or threatened breach of the non-competition and an opportunity for Walker to cure the breach or threatened breach before seeking an injunction and an attorney's fees.

EXHIBIT F & G – Non changes. (There are two documents marked as Exhibit F. I assume that those documents together make up Exhibit F.)

I will be glad to discuss my comments and suggestions with you. I look forward to hearing back from you after you consult with your clients.

                      Sincerely,

                      Raymond L. Jackson, Jr.

cc: Mr. John B. Walker

LAW OFFICES OF

## COPELAND, FRANCO, SCREWS & GILL, P. A.

PROFESSIONAL ASSOCIATION
444 SOUTH PERRY STREET
MONTGOMERY, ALABAMA 36104

MAILING ADDRESS:
P. O. BOX 347
MONTGOMERY, AL 36101-0347

TELEPHONE (334) 834-1180    FACSIMILE (334) 834-3172

RICHARD H. GILL *F.A.C.T.L.; F.A.A.A.L.
ROBERT D. SEGALL *F.A.C.T.L.
JOHN A. HENIG, JR.
LEE H. COPELAND
GEORGE W. WALKER, III
J. DAVID MARTIN
SHANNON L. HOLLIDAY
C. NELSON GILL

OF COUNSEL:
HERMAN B. FRANCO
EUEL A. SCREWS, JR.
JAMES G. HAWTHORNE, JR.

ALBERT W. COPELAND
(1927-1983)

DEXTER C. HOBBS
(1955-1990)

Email Address: ngill@copelandfranco.com

June 21, 2007

VIA FACSIMILE
Raymond L. Jackson, Jr., Esq.
P.O. Box 3575
Auburn AL 36831-3575

RE:   US Beverage v. Walker

Dear Raymond:

I have received your comments in regard to the attachments to the settlement agreement. After having a chance to reflect on the letter, I offer the following response:

1.   Exhibit A. The word "with" was inadvertently capitalized in the draft that I sent to you. I believe that the phrase otherwise relates to the intention to allow Mr. Edmondson to do whatever is necessary to transfer Walker's stocks onto the books, and therefore I believe that it is an appropriate part of the agreement. I do not believe that it has any further negative effect on your client. However, if you still would like to discuss this provision, I will be happy to discuss it with you.

2.   Exhibit B. Agreed.

3.   Exhibit C. I have no problem with modifying the language to read "personal guarantor or for which John Walker may be alleged by a third party to be a responsible party as a result of Walker's prior affiliation with U.S. Beverage."

In regard to your contention about the credit card, our clients have agreed to take full responsibility for the credit card and to hold John Walker harmless in regard to the credit card. They will not agree to pay off the credit card within a certain time frame. With that being said, I will speak with our clients and see if they will agree to add a provision in regard to at least making the minimum monthly payment, although that was clearly not agreed to at the mediation.

**EXHIBIT 3**

Raymond Jackson, Esq.
June 21, 2007
Page 2

       In regard to adding a provision, and a new agreement, in regard to U.S. Beverage having to pay off or refinance the SBA loan within one year, U.S. Beverage simply cannot and will not agree to that. First of all, as I stated, U.S. Beverage has no control over SBA. However, as I also stated, it is in both U.S. Beverage's and John Walker's best interest to have the SBA loan refinanced and U.S. Beverage will make every reasonable effort to have the loan refinanced. I am happy to add a phrase such as that; however, it is simply not a reasonable addition to the prior agreement to add a time limit in which the SBA loan must be paid off or refinanced, upon a penalty being imposed, and no such agreement was ever made or discussed. Finally, it is not proper to tie the SBA loan to the non-compete agreement and U.S. Beverage will not agree to such an additional provision.

4.      Exhibit D. Agreed.

5.      Exhibit E. We will agree to change the language to: "Walker shall not ... or compete with U.S. Beverage, *or directly license his product for use by third-party competitors*, for the time specified, in each of all the following areas:" Then, I would add another paragraph that states, "John Walker shall notify all potential licensees who may be competing in the area specified by this agreement of the existence of the non-compete agreement."

In regard to the provision about allowance for curing the breach, we would agree to give notice of a ten-day opportunity to cure the breach.

6.      Exhibits F and G. Agreed.

In regard to the confidentiality provision, I agree to add a specific phrase allowing your client to disclose the existence of the non-competition agreement to any third parties as is deemed necessary to effectuate the intent of the agreement. I am happy to try and draw up the language, or you can do it if you would like.

Furthermore, as we discussed, we would be willing to agree to a brief extension of time to file and complete this settlement agreement with the court, if it becomes necessary. I would also be happy to discuss this with you. I look forward to hearing from you shortly.

                            Sincerely,

                            C. Nelson Gill



# Jackson Law Group, P.C.

Raymond L. Jackson, Jr. (AL & GA)
Scott R. Crouse
Brian D. Mann, of Counsel

660 N. College St., Suite D
P.O. Box 3575
Auburn, AL 36831-3575
tel. 334.821.0600
fax. 334.821.1950

2505 Crawford Rd.
Phenix City, AL 36867
tel. 334.664.0336
fax. 334.664.0340

June 26, 2007

C. Nelson Gill, Esq.
Copeland, Franco, Screws & Gill, P.A.
P.O. Box 347
Montgomery, AL 36101-0347

**VIA FAX & U.S. MAIL**

Re:   U.S. Beverage, Inc. & GBD Holding, LLC

Dear Nelson:

Thank you for your letter dated June 21, 2007. My client and I are dedicated toward effectuating this settlement. We believe that the agreement signed on May 24, 2007, is binding and can be enforced. If we cannot work out our dispute about the wording of the settlement documents, I have been instructed by my client to file a motion to compel settlement to seek the Court's helping in doing so.

With the goal of effectuating a final settlement in mind, my client and I have discussed your letter. We can agree to everything that you propose in your letter except as to your proposed new language for the non-competition agreement (Exhibit E). Although my client and I understood that your client was offering to pay off the credit card within a time certain and that your client had committed to doing a re-financing within a time certain, my client will agree to waive these contentions if we can work out our other issues.

Paragraph 8 of the Mediation Settlement Agreement states: "John Walker agrees to enter into a non-compete agreement with U.S. Beverage not to compete with U.S. Beverage within..." all of Alabama and parts of Mississippi and Tennessee. This agreement does not mention that it is intended to bind third parties who license the Juice Alive® brand name. Prior to the mediation, Trident Marketing, Inc. entered into licensing agreements with Dispensing Systems of Georgia, Inc. and other licensees. At no point during the mediation, did anyone mention applying the non-compete to third party licensee. To do so, would cause my client to breach its agreements with Dispensing Systems and other licensees. If Walker and I had understood that this was your clients' intention, my client would not have agreed to the non-competition provision. I understood the purpose of the non-competition provision as being to prevent Walker or his employees (including Buddy Todd) from soliciting U.S. Beverage's customers (or any other potential customers) in the affected geographic areas. I do not believe that the Court would interpret the above quoted language as applying the non-compete agreement to third parties or as barring my client from simply licensing a product. Because Walker and Trident Marketing, Inc. have agreed to enter into a non-competition agreement, Walker understands and agrees that he,

his company, and/or his employees will not be able to assist licensees of Juice Alive® in any manner in marketing in the affected geographic areas. In other words, Walker and his employees will completely stay out of the affected areas during the term of the non-competition agreement. It is unreasonable to ask Walker to breach his company's agreements with Dispensing Systems and other licensees, when we never discussed applying the non-competition agreement to third party licensees at the mediation.

Even if the Court were to agree with your clients' interpretation of the Mediation Settlement Agreement, your client will not benefit from barring Dispensing Systems or other licensees from selling Juice Alive® brand juice in the affected geographic areas. Dispensing Systems has notified Walker that it intends to become a Cool Tropics licensee, if Walker refuses to allow it to sell Juice Alive® in any area that it chooses. If your client pushes the issue, it will still be competing with Dispensing Systems just under another juice brand name.

I look forward to hearing back from you after you consult with your clients.

Sincerely,

Raymond L. Jackson, Jr.

cc: Mr. John B. Walker

LAW OFFICES OF
## COPELAND, FRANCO, SCREWS & GILL, P. A.

PROFESSIONAL ASSOCIATION

RICHARD H. GILL *F.A.C.T.L.; F.A.A.A.L.
ROBERT D. SEGALL *F.A.C.T.L.
JOHN A. HENIG, JR.
LEE H. COPELAND

GEORGE W. WALKER, III
J. DAVID MARTIN
SHANNON L. HOLLIDAY
C. NELSON GILL

444 SOUTH PERRY STREET
MONTGOMERY, ALABAMA 36104

MAILING ADDRESS:
P. O. BOX 347
MONTGOMERY, AL 36101-0347

TELEPHONE (334) 834-1180

FACSIMILE (334) 834-3172

*Email Address: ngill@copelandfranco.com*

OF COUNSEL:
HERMAN B. FRANCO
EUEL A. SCREWS, JR.
JAMES G. HAWTHORNE, JR.

ALBERT W. COPELAND
(1927-1983)

DEXTER C. HOBBS
(1955-1990)

June 28, 2007

**BY FAX AND U.S. MAIL**

Raymond L. Jackson, Jr.
P.O. Box 3575
Auburn AL 36831-3575

  RE: U.S. Beverage v. Walker

Dear Raymond:

  This letter is in response to your letter dated June 26, 2007.

  In regard to the non-compete agreement, which is the only portion that we are discussing at this point, it is my understanding that it is your contention that your client, at the mediation, entered into the non-compete agreement, for the specified areas, with the intention of still licensing the Juice Alive brand, the brand that was the focus of this lawsuit, to third parties so that they could compete and sell Juice Alive in the restricted areas, and during the times, of the non-compete agreement. In other words, it is your client's contention that, while he will not personally call on customers in the areas covered by the non-compete, he will license third parties to compete on his behalf, using the "Juice Alive" brand, which was formerly used by U.S. Beverage.

  The entire issue in this lawsuit was that your client, an officer of U.S. Beverage, was competing in the marketplace, using the Juice Alive brand, which had previously been sold by U.S. Beverage, against U.S. Beverage. John Walker, your client, was able to confuse the marketplace through the use of Juice Alive, and thereby compete with U.S. Beverage in an unfair manner. The entire consideration for the mediation settlement agreement was the fact that our clients gave your client all rights to the future use of "Juice Alive" in return for a limited non-compete agreement in certain areas and for an agreed time, so that U.S. Beverage could have fair competition in those markets for that interval, free of a competitor using the trademark.

**EXHIBIT 5**

Raynmond L. Jackson, Jr.
June 28, 2007
Page 2 of 3

At the mediation, we had discussions for many hours during which the non-compete area was essentially narrowed to the places which your client dictated, limiting the non-compete agreement to Alabama and to the western portion of Tennessee and a narrow band of Mississippi. During the negotiations, there were actually discussions between the parties about states such as North Carolina, in which both parties informed the other that they already had contractual agreements in that state and where U.S. Beverage had not previously established a presence with the "Juice Alive" trademark, and therefore, it would be difficult to enter into an effective non-compete agreement for that state. For your client to now argue, that after all of the negotiations, he had <u>already</u> entered into licensing agreements to distribute the Juice Alive product, which was the focal point of this lawsuit, in the very non-compete areas that we agreed to in the ultimate mediation settlement, is simply unacceptable.

If you remember, the parties, prior to this lawsuit, were operated under a non-compete agreement which stated that John Walker: "shall not work in any competing business" in the specified area. Your argument, made both in briefs and directly to us at the mediation, was that that non-compete agreement was poorly drafted and allowed John Walker to license "Juice Alive" to third parties in the non-compete area. Since you understood clearly that we contended that the old non-compete should not be interpreted in that way, you represented at the mediation that we could enter into a real and effective non-compete agreement that was not poorly drafted like the last one. Unequivocally, your client can not now not make the assertion that we sat and negotiated a non-compete agreement which would allow him to continue to do the same thing as before and to compete with U.S. Beverage, with U.S. Beverage's prior trade name and good will, in the very areas that we agreed to. Mr. Walker would simply be doing by indirection what he agreed he cannot do, and continues to use the "Juice Alive" brand against U.S. Beverage even in the places and during the time prohibited.

I understand your caveat at the end of your letter, in which you state that, even if we win, in putting this before the Court, my clients are essentially out of luck because the third parties will use another brand name instead of the Juice Alive brand name to compete against them. That may very well be true, but this is the entire issue in a capsule, in that the entire consideration for the settlement agreement was the fact that U.S. Beverage would not have to compete against itself (i.e. Juice Alive) in those areas for the times specified. If a true third party (not a front of Mr. Walker) competes using its own brand, neither your client nor ours can prevent that.

It is unfortunate to me that we have reached this situation; however, I cannot agree to your demand to have the non-compete agreement made irrelevant, and allow the consideration for the settlement to be defeated. Therefore, if this is unable to be resolved, we will request that the Court hold a hearing to enforce the settlement agreement as it was

Raynmond L. Jackson, Jr.
June 28, 2007
Page 3 of 3


written, and it was intended. If you would like to discuss this matter, I am available today; however, I have various other obligations tomorrow and will be out of the office for much of the day.

Sincerely,

C. Nelson Gill

CNG/dm

cc:   Grady Kittrell
      Tom Clark