**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **U.S. BEVERAGE, INC.** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Civil Action No. 2:06-CV-496-SRW** |
| | ) |
| **JOHN BUSTER WALKER, II; and** | ) |
| **TRIDENT MARKETING, INC.;** | ) |
| | ) |
|     **Defendants.** | ) |
| ------------------------------------------------- | |
| **JOHN BUSTER WALKER, II; and** | ) |
| **TRIDENT MARKETING, INC.;** | ) |
| | ) |
|     **Counterclaim Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **U.S. BEVERAGE, INC.;** | ) |
| | ) |
|     **Counterclaim Defendant,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **GRADY DOWLING KITTRELL;** | ) |
| **THOMAS GOING CLARK, III; and** | ) |
| **NORMAN "Buddy" TODD;** | ) |
| | ) |
|     **Third Party Defendants.** | ) |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MEMORANDUM IN SUPPORT**
**OF MOTION FOR ENFORCEMENT OF MEDIATED SETTLEMENT**

COME NOW, Defendants John Walker and Trident Marketing, Inc. in the above-styled case and does hereby respond to Plaintiff U.S. Beverage, Inc.'s Memorandum in Support of Motion for Enforcement of Mediated Settlement. Defendants argue herein that this Court should enforce the Mediated Settlement Agreement as written. Plaintiff

advocates an interpretation that varies substantially from the terms of the agreement. The mediation that resulted in the Mediation Settlement Agreement was lengthy and contentious.  Plaintiff states in his Memorandum that Walker "dictated" many of the terms in the Settlement. In reality, the opposite was true. As the Mediation Settlement Agreement clearly shows, Walker made many more concessions than U.S. Beverage. U.S. Beverage has but three obligations under the Mediation Settlement Agreement. As argued below, it has refused to comply with at least one of its obligations.

## ARGUMENT

Defendants John Walker and Trident Marketing, Inc. agree with Plaintiff that this Court has the authority to interpret and enforce the Mediated Settlement Agreement. However, Defendants strongly disagree with Plaintiff's interpretation of the settlement agreement.  At no point since the settlement, have Defendants asserted that this case is not settled or attempted to repudiate the settlement.  Plaintiff argues that Defendants have breached the settlement agreement and acted in "bad faith," because Defendants disagree with the wording of the final settlement agreement drafted by Plaintiff's attorney and disagree with Plaintiff's attorney's interpretation of the Mediated Settlement Agreement. Despite all of the offensive and unprofessional allegations made by Plaintiff's attorney – asserting bad faith or a "scam" on the part of Defendants— it is Plaintiff who refused to negotiate in good faith to resolve the dispute over the wording of the final settlement agreement.  This issue is in Court because Plaintiff has adopted a "take it or leave it" approach to the wording of the final settlement agreement drafted by Plaintiff's attorney.

Almost every suggestion made by Defendants' attorney as to changes to the final settlement agreement was rejected out of hand and criticized by Plaintiff's attorney.[1]

Even more unprofessional are Plaintiff's assertions in its brief as to what the mediator Bill Coleman saw or believes. All parties know that the mediator cannot be subpoenaed into Court and asked to testify as to what occurred at the mediation. Defendants could likewise make assertions as to what Mr. Coleman observed or now believes. However, Defendants will refrain from responding in kind to such unsupported assertions. It is important to note that the negotiations that Plaintiff referred to in his brief were conducted through the mediator and none of the negotiations between Plaintiff and Defendants were conducted face to face. When Plaintiff makes assertions in its brief as to what Walker understood or intended, Plaintiff has no basis for making such assertions.

Prior to the mediation, Defendants filed at least two briefs discussing Defendants' position that the simple licensing of a trademark to a third party for application to its product does not violate a non-competition agreement. Defendants' argument on this point was not based solely upon the poor wording of the original non-competition agreement in this case. During the mediation, Plaintiff U.S. Beverage knew that Walker and his company licensed the Juice Alive® trademark to Dispensing Systems of Georgia, Inc. (an Atlanta based company) and others. Plaintiff also knew that Defendants contested its assertion that such licensing violated Walker's non-competition agreement.

---

[1] During the mediation, Plaintiff offered two important incentives to prompt Defendants to settle: (1) Plaintiff U.S. Beverage would re-finance its debts to remove Walker from being a responsible party of the debts; and (2) Plaintiff would be financially responsible for and hold harmless Walker from all debts including an old credit card debt from the company that Walker merged into U.S. Beverage, Inc. As seen by the letters put into evidence by Plaintiff, Plaintiff refU.S.ed to place any time limits on performing either of the incentives. Plaintiff has rendered these promises illU.S.ory. Despite this refU.S.al, Defendants are still willing to negotiate on the other issues with Plaintiff.

When Plaintiff U.S. Beverage demanded a non-competition agreement as part of the

settlement, Plaintiff did not mention licensing, and Plaintiff did not mention "indirect"

competition.

In reviewing the final settlement agreement prepared by Plaintiff's attorney,

Defendants' attorney first raised the issue of licensing in a letter dated June 20, 2007

because the final settlement agreement referred to "indirect" competition. If Defendants

intended to act in bad faith, Defendants could have signed the final settlement agreement

and litigated this issue later, rather than raising the issue and reminding Plaintiff that

Defendants have already licensed its Juice Alive® trademark to third parties.

> **I.     The plain language of the Mediation Settlement Agreement supports
> Defendants' assertion that it is not prohibited from licensing its
> trademark to third parties.**

Plaintiff devotes the majority of its Brief to arguing that Defendants have

somehow breached the Mediated Settlement Agreement. The exact language that is at

issue in the Mediation Settlement Agreement is as follows:

> John Walker agrees to enter into a non-compete agreement with U.S.
> Beverage not to compete with U.S. Beverage within Alabama, or within
> Mississippi[…].

U.S. Beverage somehow interprets this phrase as barring John Walker from licensing the

Juice Alive® to companies that sell in the non-competition territory. Indeed, any

agreement with language that barred such acts would be un-enforceable in Alabama.[2]

---

[2] Non-competition agreements are statutorily disfavored in Alabama. *See Ala. Code (1975)* §8-1-1(a)
("Every contract by which anyone is restrained from exercising a lawful profession, trade, or bU.S.iness of
any kind otherwise than is provided by this section is to that extent void.") There is a limited exception in
§8-1-1(b) that allows the agreements in some circumstances. Alabama courts have developed a test for
whether an agreement meets the exception of §8-1-1(b). The party seeking enforcement mU.S.t prove four
things:
"(1) the employer has a protectable interest; (2) the restriction is reasonably related to that interest; (3) the
restriction is reasonable in time and place; (4) the restriction imposes no undue hardship."

Defendants are not seeking to add or negate terms of the Mediation Settlement Agreement; they are merely giving it the only legally enforceable and reasonable interpretation. In fact, it is Plaintiff that seeks to expand the Mediation Settlement Agreement beyond what was agreed to and what is enforceable under Alabama law.

It should first be noted that the plain language of the agreement is that 'John Walker,' *not Juice Alive,* agrees not to compete with U.S. Beverage. John Walker's clear understanding of what he was agreeing to not do was that neither he nor any of his employees would physically come within U.S. Beverage's established sales territory and try to take customers from U.S. Beverage. Yet, U.S. Beverage now argues that the non-compete protection should extend to the Juice Alive® trademark, as well. Such an interpretation conflicts with the plain meaning of the agreement. John Walker is not Juice Alive, nor is Juice Alive John Walker. The third parties, who have simply licensed the use of the Juice Alive® trademark, are not parties to the non-competition agreement. These licensees are free to sell products bearing the Juice Alive trademark anywhere that they choose. These licensees are not controlled in any way by John Walker or his employees. Walker and his employees agree that they are prohibited by the settlement agreement from assisting its licensees in marketing activities inside the non-competition area, but Walker's company is not barred from entering into licensing agreements by the non-competition agreement.

For a non-compete agreement to be enforceable, it must relate to the employer's 'protectable interest.' *Systrends, Inc. v. Group 8760, LLC,* 2006 WL 2925323, *27 (Ala.

---

*DeVoe v. Cheatham,* 413 So.2d 1141, 1142 (Ala.1982) ("If the restraint imposed by a promise is greater than is necessary for the protection of the covenantee, the promise is necessarily invalid.") (6 *Williston on Contracts* § 13:4 (4th ed.), citing *Restatement (Second) of Contracts,* § 188.)

Oct. 13, 2006). Examples of an employer's 'protectable interest' are business goodwill, trade secrets or other proprietary or confidential information. *See Stewart & Stevenson Services, Inc. v. Serv-Tech, Inc.*, 879 S.W.2d 89, 97 (Tex.App. 1994); *see also, 20 Am. Jur. Proof of Facts 3d* 705, § 4 ("The most commonly asserted protectable employer interests are: (1) skills the employee acquired in the course of employment; (2) confidential or unique information, such as trade secrets or customer lists; and (3) the goodwill of the employer.") Alabama courts have stated, "[a]n interest is a protectable interest when an employer possesses 'a substantial right in its business sufficiently unique to warrant the type of protection contemplated by [a] noncompetition agreement.'" *DeVoe v. Cheatham*, 413 So.2d 1141, 1142 (Ala.1982). All of the 'protectable interests' that can be used to justify and render a non-competition agreement enforceable are inherently those imbued in the employee that the employer seeks to restrict. The Alabama Supreme Court held in *James S. Kemper & Co. v. Cox & Assocs.*, 434 So.2d 1380, 1384 (Ala.1983), that "post employment restraint [...] must be on the ground that the employer has a legitimate interest in restraining the employee from appropriating valuable trade information and *customer relationships* to which he has had access in the course of his employment." (Citing *Restatement (Second) of Contracts*, § 188.)

All of these statements clearly show that covenants not to compete are only enforceable when they reasonably restrict the employee's use of trade secrets, goodwill, customer lists or other intangible assets that the employee gained while working for the employer. Absolutely none of U.S. Beverage's 'protectable interests' are at stake or in danger when Walker licenses Juice Alive® to a third party. Walker is not using valuable intangible assets that he acquired from U.S. Beverage when he licenses the trademark

that he developed and his company has always owned. By agreeing to submit to the covenant not to compete, Walker was agreeing not to use the customer lists and relationships that he developed while in the employ of U.S. Beverage to steal their customers. Such interests of U.S. Beverage are valid and protectable by law or contract. However, he was not agreeing, nor could such a non-competition agreement be enforced, to restrict his right to license his own trademark. To put it simply: All of U.S. Beverage's interests that *can be* legally protected *are* protected by Defendant's interpretation of the Agreement.

In its Motion, U.S. Beverage states, "The reason for the limited non-compete was for U.S. Beverage, after giving up Juice Alive, to not have to compete against itself, i.e. its brand Juice Alive, for the time periods and locations agreed to." Plaintiff seeks to bar Defendants from licensing to third parties in order to bar third party competitors from the designated market (including Alabama), not to protect their interests in the intangible assets that Walker allegedly acquired while in their employ. Thus, it is a bald-faced attempt at an invalid restraint of trade. Plaintiff U.S. Beverage cannot use a non-competition agreement with Walker to restrain trade by third parties who were never employees or owners of U.S. Beverage (or participants in this litigation).

Furthermore, Plaintiff's assertion that they would be "competing with themselves" is demonstrably false. U.S. Beverage has not used the Juice Alive trademark for their goods in over one and a half years. Plaintiff changed to the Fruzars mark before breaking all ties with Walker and his Juice Alive® brand and bringing this lawsuit. Indeed, the evidence clearly establishes that U.S. Beverage was a mere licensee of the Juice Alive® mark. Trident Marketing, Inc. is the federally registered owner of the

trademark Juice Alive®. During the mediation, U.S. Beverage agreed to drop its legal

challenge to Defendants' ownership of the trademark; it did not agree to give away its

trademark.

**II. Plaintiff U.S. Beverage's request for sanctions should be denied.**

Parties should not be sanctioned for seeking the Court's assistance in deciding

legal disputes. In this case, Defendants Walker and his company in good faith disagree

with Plaintiff's assertion that Walker has agreed not to license his company's Juice

Alive® trademark to third party licensees, who may be doing business within the non-

compete area. Rather than allowing this issue to become a full fledged lawsuit, Walker

and his attorney raised this issue prior to executing the final settlement agreement.

Previously and herein, Walker has put forward cogent and legally support arguments,

which run contrary to Plaintiff's assertions. Defendants have not breached or repudiated

the Mediated Settlement Agreement. If this Court agrees with Plaintiff's interpretation of

the Mediation Settlement Agreement, Defendants Walker and his company will abide by

that decision.

Plaintiff U.S. Beverage is wrong in asserting that Defendants Walker and Trident

Beverage, Inc. have breached the Mediation Settlement Agreement by bidding on a

school contract in western Tennessee. Neither Walker nor any of his employees have bid

on any contracts in western Tennessee or anywhere else within the non-competition area.

Furthermore, Walker has not assisted or directed any third-party licensee to do so.

Plaintiff's brief gives the false impression that it was Walker or his employees that made

the bid, rather than a third party licensee. If a third party has entered a bid to sell Juice

Alive® branded products in western Tennessee, it does not constitute a breach of the non-competition agreement for the reasons stated herein above.

### III. This Court should interpret the Mediation Settlement Agreement as providing that that U.S. Beverage, Inc. is obligated to pay-off or refinance all debts (including the Tropical Perfections credit card debt) within a reasonable period of time, not to exceed one year.

Paragraph 4 of the Mediation Settlement Agreement provides: "Grady Kittrell and Tom Clark [as the owners of U.S. Beverage] agree to indemnify and hold harmless John Walker from any debts of U.S. Beverage and of GBD Holding, Inc, including without limitation credit card debt of Tropical Perfections, Inc." As Plaintiff's counsel plainly states in Plaintiff's Exhibit 3, U.S. Beverage has refused to agree to pay off the Tropical Perfections credit card debt. Plaintiff's counsel states that U.S. Beverage merely agreed to indemnify and hold him harmless from such debts, but that Plaintiff did not agree to pay off or refinance the debts within any definable period of time. This position is unacceptable, and it will lead to further proceedings before this Court. In fact, Plaintiff U.S. Beverage has already defaulted on its obligation to make timely payments on the Tropical Perfections credit card debt. In a letter dated July 16, 2007, Defendants' attorney wrote to Plaintiff's attorney to demand that U.S. Beverage bring the credit card current. (See Exhibit A) As of the date of this brief, Plaintiff has not responded to this demand. If anyone has breached the Mediation Settlement Agreement, it is Plaintiff U.S. Beverage.

The purpose of paragraph 4 of the Mediation Settlement Agreement was to relieve Walker from all liabilities of the company. Holding him harmless without paying the debt does Walker no good. If Walker has to file an indemnification action to enforce the settlement agreement, it will only lead to more litigation. Meanwhile, Walker will either

have to make the monthly payments himself or suffer the damage to his credit rating while he waits for repayment from U.S. Beverage. The only reasonable interpretation of this provision from the Mediation Settlement Agreement is to require U.S. Beverage to pay these debts within a specific time period. Defendants ask this Court to interpret said agreement as providing that the debts (including the Tropical Perfections credit card) must be paid in full or re-financed no later than one year from the date of the Mediation Settlement Agreement.

## CONCLUSION

Defendants John Walker and Trident Marketing, Inc. respectfully ask this Court to interpret the Mediation Settlement Agreement as providing: (a) that the non-competition agreement is not violated by the simple licensing of the use of the Juice Alive® trademark to third parties; and (b) that Plaintiff U.S. Beverage, Inc. is legally obligated to pay off or refinance all debts (including the Tropical Perfections credit card debt) within a reasonable period of time not to exceed one year. Furthermore, Defendants ask that this Court deny Plaintiff's requests for sanctions and attorney's fees.

**RESPECTFULLY SUBMITTED** this the 20th day of JULY 2007.

Raymond L. Jackson, Jr. (JAC054)
Attorney for John B. Walker, II, and
Trident Marketing, Inc.

**OF COUNSEL:**
Raymond L. Jackson, Jr.
JACKSON LAW GROUP, P.C.
P.O. Box 3575
Auburn, Alabama 36831-3575
(334) 821-0600
(334) 821-1950 (FAX)
rjackson@auburnattorney.com

**CERTIFICATE OF SERVICE**

I certify that on this the 20TH day of JULY 2007 a copy of the foregoing pleading was served upon all counsel of record through the EMCS electronic filing system and/or by placing said copy in First Class U.S. Mail with postage prepaid to the following addresses:

> Richard H. Gill, Esq.
> C. Nelson Gill, Esq.
> Copeland, Franco, Screws & Gill, P.A.
> P.O. Box 347
> Montgomery, AL 36101-0347

Raymond L. Jackson, Jr. (JAC054)